## AMBROSE KOTTSCHADE v. GERALD LUNDBERG.

160 N. W. (2d) 135.

June 28, 1968—No. 40,933.

*Carl E. Erickson,* for appellant.

*Thomas B. Cline,* for respondent.

*Kenneth M. Anderson* and *Cant, Haverstock, Gray, Plant & Mooty,* for Minnesota Association of Assessing Officers and Minnesota Assessors Association, amici curiae.

*Douglas M. Head,* Attorney General, *Richard Kyle,* Solicitor General, and *Gerald T. Laurie,* Special Assistant Attorney General, for Commissioner of Taxation, amicus curiae.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal by plaintiff from a judgment of the district court refusing to compel defendant to make certain appraisal cards available for inspection and reproduction.

Plaintiff, Ambrose Kottschade, is the executive director of the Minnesota Lakeshore League, Inc., an association of 4,000 people who own lakeshore property in Minnesota. Its primary objective is to assure equitable real estate tax treatment to its members. Approximately 250 members own lakeshore property in Aitkin County.

"Field cards" are forms designed by the county assessors but patterned after forms provided by the commissioner of taxation on which the assessor records his observations and opinions with respect to each piece of property which he assesses. The cards typically contain comments on topographical features and size and condition of buildings as well as opinion about full and true market value. They are in bound ledgers which the local assessors deposit with the county assessor after completing them. The ledgers are kept by the county assessor for a few years, but then apparently are destroyed. The valuations contained in the field cards are recorded in permanent assessment books at 30 percent of full and true value. Admittedly, these assessment books do not contain much of the detailed information found on the field cards.

On March 13, 1967, plaintiff went to the Aitkin County assessor's

office to inspect and reproduce appraisal records. Defendant, who is the county assessor, was absent, but the deputy assessor granted plaintiff access to field cards which had been made by assessors who conducted a state equalization assessment in 1966. Plaintiff photographed 71 of these cards.

On March 14 plaintiff returned to the county assessor's office to complete his work. Defendant, acting on the advice of the county attorney, refused to allow plaintiff to inspect the field cards. Thereupon plaintiff obtained an order to show cause from the Aitkin County District Court requiring defendant to show cause why an order should not issue compelling defendant to permit plaintiff to inspect all records in defendant's custody, including field cards.

After a hearing on April 10, 1967, the court held that the field cards, which are also known as work sheets in the office of the county assessor, are not public records and that defendant was not required to permit plaintiff to inspect, examine, abstract, or copy them. Judgment was ordered accordingly. In a memorandum made a part of its findings, the court expressed the opinion that a public record is one which could be introduced into evidence without foundation or which could be certified by the public officer making the same, but that work sheets or field cards are not public records open to examination by any individual and that there was no law requiring field cards to be made.

The sole issue presented on this appeal is whether field cards are public records which must, under Minn. St. 15.17, subd. 4, be open to public inspection.

Is the field card a "public record"? Not, it would seem, as that term is popularly used. It is neither a memorial of an official transaction nor a document received from members of the public in the ordinary course of official business. Nor is a field card within the common-law definition of "public record." In Wiley v. Woods, 393 Pa. 341, 141 A. (2d) 844, petitioner sought to compel discovery of field notes on which an investigator had recorded observations and comments with respect to particular properties in a zoning district. The Pennsylvania Supreme Court denied the petition for mandamus. The applicable statute, it said, did not require disclosure of field notes. The statute involved differed

materially from § 15.17, so the statutory analysis is not helpful here, but the court went further, saying that at common law such notes did not constitute public records. The question, therefore, boils down to whether § 15.17 requires disclosure of field cards which would not, in its absence, be subject to disclosure.

Section 15.17 reads in pertinent part:

"Subdivision 1. All officers and agencies of the state, and all officers and agencies of the counties, cities, villages, and towns, shall make and keep all records necessary to a full and accurate knowledge of their official activities. All such public records shall be made on paper of durable quality and with the use of ink, carbon papers, and typewriter ribbons of such quality as to insure permanent records. * * *

\* \* \* \* \*

"Subd. 4. Every custodian of public records shall keep them in such arrangement and condition as to make them easily accessible for convenient use. * * * Except as otherwise expressly provided by law, he shall permit all public records in his custody to be inspected, examined, abstracted, or copied at reasonable times and under his supervision and regulation by any person; * * *."

The operative language of subd. 1—that officers "shall make and keep all records necessary to a full and accurate knowledge of their official activities"—is broad indeed. Read literally, it seems to place no bounds on the information which must be made a public record. Any casual jotting, any tear-sheet observation, which discloses the promptings of official action, is to some extent "necessary to a full and accurate knowledge of * * * official activities." But it appears to us that the legislature did not intend anything that sweeping. Such a broad definition of public records would fill official archives to overflowing. We are not suggesting, however, that the field cards are as informal as casual jottings. They are, in fact, standardized forms consistently used by assessors. Nonetheless, the example of a casual jotting does point up the necessity for placing reasonable limits on the statutory language.

Such a limit can be found by an analysis of what constitutes "official activities." It seems to us that they are limited to official actions as dis-

tinguished from thought processes. If so, all that need be kept of record is information pertaining to an official decision, and not information relating to the process by which such a decision was reached. Unless such a construction is adopted, public officials will constantly be required to articulate, and reduce to permanent record, the bases for their actions. In those instances in which action is dictated mainly by considerations of judgment, such articulation would be virtually impossible. In any case, it would seriously impede the expeditious transaction of public business.

What little relevant authority there is appears to support such a limited definition of "official activities." In Industrial Comm. v. Holohan, 97 Ariz. 122, 397 P. (2d) 624, plaintiff sought to compel discovery of an entire claim file made before the commission. The relevant disclosure statute provided that "[p]ublic records *and other matters* in the office of any officer at all times during office hours shall be open to inspection by any person." (Italics supplied.) The italicized language makes clear that the statute requires disclosure of a rather broad category of material. Notwithstanding, the Arizona court denied discovery. "* * * [I]nformation which is not collected to serve as a memorial of an official transaction or for the dissemination of information," it said, "is private except as to a claimant or parties * * *." 97 Ariz. 126, 397 P. (2d) 627.

Matter of Andrews v. Police Dept. 50 Misc. (2d) 343, 270 N. Y. S. (2d) 240, affirmed, 276 N. Y. S. (2d) 847, involved a petition to order production of a memo book used by a traffic officer to record the details of an automobile accident. Section 66-a of New York's Public Officers Law provided that "all reports and records of any accident, kept or maintained by the * * * police department * * * of any * * * city * * * shall be open to the inspection of any person having an interest therein * * *." The court held that the memo book was not a report or record within the meaning of § 66-a. Although the basis for the decision is not set out in detail, it seems clear that the New York court considered that the memo was not a record because it constituted preliminary observation by an official rather than a testimonial of an official act.

In the instant case it is clear that the field cards contain information relating to the process by which an assessment is reached rather than information relating to the assessment itself. They are like the memo book

in Andrews. Accordingly, they are not public records, and thus their disclosure is not required under Minn. St. 15.17, subd. 4. It perhaps goes without saying that such a conclusion would not prevent access to field cards by persons who have a direct interest in the assessment in question. The trial judge recognized this when he observed that, in appropriate cases, the cards could be reached by the discovery procedure of the Rules of Civil Procedure. We are, in fact, of the opinion that a property owner who challenges the assessment of his property could, either by discovery under the rules or by an order to show cause, compel disclosure of field cards on other property in the same general locale for purposes of ascertaining whether his property has been equitably assessed. It does not follow, however, that the assessor must make the cards available to anyone who requests to see them without proper court authority.

Plaintiff contends that the field cards are necessary records because they are required to be kept by § 241 of the Minnesota Assessor's Manual, which provides:

"Appraisal forms or cards prescribed by the commissioner of taxation and revised in 1959 should be used in appraising all real property. * * * Use of these forms will permit the assessor to record all important information about each property and help avoid oversight. The forms should be used *in the field* and all detail entered neatly and legibly so that they may serve as permanent records.

"When accurate and complete these appraisal records are invaluable in comparing and correcting or in explaining and defending assessments. The county assessor must of necessity rely on these records in determining and entering assessments in the assessment book. Boards of Review and equalization need these appraisal records in considering complaints or objections."

This section was issued by the Department of Taxation. It was not issued by the commissioner of taxation pursuant to the supervisory authority vested in him by Minn. St. 270.06. Thus, it in no sense has the force of law. It is advisory only, as the use of "should" rather than "shall" indicates. Furthermore, the reference in the second paragraph to the county assessor and boards of review indicates that the forms are to be used, not

as public records, but as internal aids in the administration of the tax laws. Therefore § 241 is not relevant to the scope of Minn. St. 15.17, subd. 4.

Plaintiff's attorney argues that there is no subject of greater public interest than real estate taxation and the quest for equalization; that there is no better way to achieve the goal of equalizing taxes than by full public disclosure; and that the public has a natural inclination to suspect wrongdoing when records of the nature of "field cards" are suppressed from public view. We agree that there is great public interest in real estate taxation and equalization of taxes, but until the legislature makes the so-called "field cards" of an assessor public records we cannot say under the facts of this case that they are public records within the definition of our statutes.

Affirmed.