17 Ill. App.3d 1090 (1973)
309 N.E.2d 362
THE PEOPLE ex rel. BETTER BROADCASTING COUNCIL, INC., et al., Plaintiffs-Appellants,
v.
THOMAS KEANE et al., Defendants-Appellees.
No. 56273.
Illinois Appellate Court  First District (4th Division).
March 14, 1973.
Rehearing denied April 2, 1974.
*1091 Thomas R. Meites, Lawrence Berg, and Marshall Patner, all of Chicago, for appellants.
Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellees.
Judgment affirmed.
Mr. JUSTICE DIERINGER delivered the opinion of the court:
The plaintiffs, Better Broadcasting Council, Inc., a not-for-profit corporation, and Donald Wheat, a citizen and taxpayer of the City of Chicago, filed a petition for a writ of mandamus in the Circuit Court of Cook County, seeking to compel the defendants to permit the inspection of records in their custody. The defendants are: Thomas Keane, an alderman of the City of Chicago and Chairman of the Committee on Finance of the City Council; Paul T. Wigoda, an Alderman of the City of Chicago and Chairman of the Subcommittee on Miscellaneous Matters of the Committee on Finance; Charles Berek, Clerk of the City Council of the City of Chicago; William Zoe, Chief Administrative Officer of the Committee on Finance of the City Council; and the City of Chicago, a municipal corporation organized under the laws of the State of Illinois.
The defendants filed a motion to dismiss on the grounds there was no legal right to the relief sought. The motion to dismiss was granted on a finding that the documents sought were not public records. The plaintiffs appeal from the order dismissing their petition.
The issue on review is whether the financial records sought are public records which must be made available for public inspection.
In 1970, the City Council of the City of Chicago announced its intention *1092 to award cable television franchises in Chicago pursuant to Section 11-42-11 of the Municipal Code (Ill. Rev. Stat. 1969, ch. 24, sec. 11-42-11) giving cities the right to award such francises. The Subcommittee on Miscellaneous Matters of the Committee on Finance issued a public notice, inviting those interested in applying for cable television franchises to submit certain documents including a draft ordinance regulating cable television franchises in the City of Chicago, a statement as to how the applicant intended to operate the franchise, and a detailed statement of the applicant's financial situation, including the names of those having a financial interest.
The Better Broadcasting Council made written demands upon the defendants for these documents in letters dated July 22, 1970, and on December 22, 1970, they filed a petition for a writ of mandamus on behalf of themselves and all other persons similarly situated to compel defendants to allow plaintiffs access to all the files concerned with cable TV in the possession of the defendants.
Both William Zoe and Alderman Wigoda wrote letters to Mr. Nicholas Rekas, the president of the Better Broadcasting Council, advising him the cable TV files would be open to his scrutiny during regular business hours.
On January 11, 1971, Rekas appeared at the office of the Committee and was given "what appeared to be the complete applications and the verbatim minutes," and inspected them for several hours. He reappeared on January 15, 1971, and the financial statements were not in the file.
After an interim motion by plaintiffs for a temporary restraining order and a preliminary injunction, which were denied by the trial court, defendants filed a motion to dismiss on the grounds the documents were not public records. The court ruled in favor of the defendants, and the plaintiffs appeal from that ruling alleging the defendants have a duty to disclose the documents under the statutory and common law of the State of Illinois. The defendants answer that the documents were disclosed to plaintiffs in the first instance and mandamus is improper.
The issue to be determined, whether the financial records are public records open for public inspection, is a narrow one, but there are broad policy considerations with respect to the operation of the legislative process and a philosophical presumption in favor of full disclosure.
In a democratic society where the government is responsive to the people, it is important that a citizen have access to matters relating to the public's business so he may evaluate the competency of his representatives and cast his vote intelligently.
 1 The people's right to know, however, must be balanced by the practical necessities of governing. Public officials must be able to gather *1093 a maximum of information and discharge their official duties without infringing on rights of privacy. Certain information possessed by government is often supplied by individuals and enterprises that have no strict legal obligation to report but do so on a voluntary basis, with the understanding the information will be treated as confidential. Therefore, it is important to consider whether disclosure would constitute an invasion of privacy; whether there could be prejudice to private rights or give an unfair competitive advantage; whether it would prevent responsible business people from serving the public; whether it would discourage frankness; and whether it could cut off sources of information upon which a government relies.
The Local Records Act (Ill. Rev. Stat. 1969, ch. 116, sec. 43.101 et seq.) provides a definition of a public record:
"`Public Record' means any book, paper, map, photograph, or other official documentary material, regardless of physical form or characteristics, made, produced, executed or received by any agency or officer pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer, or any successor thereof, as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein."
Plaintiffs contend the financial records in question are public records within the meaning of the Act and, therefore, must be disclosed to the public. They argue the records are written documents received by a public official pursuant to public business and as a result are documents which must be preserved.
 2, 3 The statute states that a "public record" is one received "pursuant to law or inconnection with the transaction of public business * * * as evidence * * * or because of the informational data contained therein." In the instant case there has been no transaction in the nature of an event which must be memoralized; therefore, the records are not of use as evidence for any transaction or for the informational data which might result from any such transaction. Contrary to plaintiffs' contention, there is a distinction between preliminary matters and fine documents inherent in the language of the statute. Neither does the common law aid the plaintiffs' position. In Linder v. Eckard (1967), 152 N.W.2d 833, the court did not have a statutory definition of a public record and looked to the common law for guidance:
"There is no single definition of public record which is applicable in all situations and under all circumstances. Perhaps the one most generally used refers to a public record as one required by law to *1094 be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. 45 Am. Jur. 420, Records and Recording Laws, # 2. A similar, although more inclusive definition, is found in 76 C.J.S. Records § 1, p. 112. The concept of public records has now generally been extended to embrace not only what is required to be kept but also what is convenient and appropriate to be preserved as evidence of public action. [Cases cited.]
Not every document which comes into the possession or custody of a public official is a public record. It is the nature and purpose of the document, not the place where it is kept, which determines its status. [Cases cited.]"
 4 These definitions, like the Illinois statute, also envision that some final action be taken before a record takes on the status of a "public record." In the case at bar, the financial records sought are not public in character; they are neither kept pursuant to law nor for convenience in the discharge of a duty imposed by law. They are business records involving individual rights of a private character which are in the custody of City officials.
In People ex rel. Hamer v. Board of Education (1970), 130 Ill. App.2d 592, the court recognized the distinction between a preliminary report and a final document. In that case a taxpayer filed a petition for a writ of mandamus to compel the school board to disclose a report on the title of land conveyed and certain receipts which might indicate whether private citizens had paid for brochures issued by the school district relative to a referendum. The trial court dismissed the complaint, but the reviewing court reversed and remanded. The court held the taxpayer had a right to inspect the documents because official action had already been taken on the basis of the documents, and the court said:
"The defendants also direct our attention to Linder v. Eckard, 152 N.W.2d 833 (Iowa 1967), in which it was held that an appraisal report was not subject to public inspection. However, the court stated therein at page 835 that appraisals were preliminary matters of investigation, and, until acted upon, material of that kind did not assume the status of a public record or writing. Thus, Linder suggests that the Iowa courts would hold preliminary matters, such as appraisals or preliminary title reports, to be public records once some official action has been taken upon them.
In the case at bar, it appears, from the record before us that official action has been taken on the preliminary title report in question. Under the applicable statutes in our State, the rationale *1095 of Linder, and the general desirability of a policy which permits the public inspection of documents acted upon by public officials in a public capacity, we believe the trial court erred in dismissing Count I of the complaint."
Similarly, in the instant case the financial records are preliminary to any official action by the City Council or its Committees. However, the suggestion that disclosure would result after official action does not necessarily follow. In his review of The People's Right to Know by Harold L. Cross in 48 Northwestern Law Review 527, United States District Judge Yankwich expressed this opinion:
"If the record is one that is not kept pursuant to law or as part of the duty to be discharged by the officer, and is not required to be filed or recorded, it is not subject to public inspection.
* * *
Only documents which present ultimate actions should be accessible to the public. Those which are merely part of the preliminary steps by which the conclusion was reached should become public only in the discretion of the particular agency."
Also central to the issue is the right of privacy  a fundamental right explicitly guaranteed by Article I, Section 6 of the Illinois Constitution of 1970:
"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, [or] invasions of privacy * * *."
The plaintiffs, who were themselves applicants for a franchise, retained their own privacy by failing to file any financial data of their own, yet they now seek to invade the privacy of others.
The plaintiffs cite language in Federal Communications Com. v. Schreiber, 381 U.S. 279, as authority for their contention that financial information should be disclosed in the public interest.
The Commission was making an inquiry into the "respective roles played by the networks, advertisers, agencies, talent, film producers and distributors and other major elements in the television industry." Music Corporation of America, one of the largest packagers and producers of network television programs, argued that "public disclosure of trade secrets and confidential data * * * might be of aid to its many competitors in this highly competitive television industry." The Commission rejected this contention and determined that public proceedings should be the rule except in extraordinary instances where disclosure would irreparably damage private competitive interests to an extent which outweighed the benefits of full disclosure.
The court held the Commission acted within its authority in promulgating *1096 such a rule under § 4(j) of the Communications Act which authized the Commission to "conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice."
Schreiber is far different from the case at bar where there is no rule similar to that promulgated under § 4(j). Neither is the posture of the case the same. In Schreiber the financial documents were a necessary and integral part of the comprehensive investigation the Commission was conducting as a means of determining policy. In the case at bar the financial records were only important as evidence of the applicant's financial integrity and have no relation to the policy-making function. The court in Schreiber also noted that the Commission and its Presiding Officer and Counsel had made "every effort to avoid public disclosure of detailed internal financial information or detailed contractual arrangements which might in fact irreparably harm private interests without sufficient compensating benefit to the public." Furthermore, it should be noted that the Federal Constitution, unlike the Illinois Constitution of 1970, contains no explicit guarantee of a right of privacy.
Although "the people's right to know" is a particularly rhapsodic phrase which tends to tempt those who read it into blindly accepting its merit at face value, we believe the countervailing considerations are more persuasive. It would be wrong to ignore the clear meaning of the Local Records Act and allow access to private records by persons whose only interest is curiosity, or whose motives may be reprehensible.
 5 The financial data requirement was premature, as no ordinance was yet in existence. If and when the ordinance is enacted, it will undoubtedly contain the usual and customary provision for surety bonds to insure performance and indemnification by the holder of the franchise, thereby protecting the public. Allowing full disclosure of information of this kind at this preliminary stage of the proceedings would give the unscrupulous an unfair advantage over responsible applicants. No franchise holder could post sufficient surety bonds unless financially stable enough to satisfy the bonding company. Therefore, under the circumstances, filing a financial statement is unnecessary before the formation and enactment of an ordinance that would spell out the requirements to obtain a franchise, and the Committee overreached its authority in requiring such a statement prematurely. Furthermore, the plaintiffs herein were afforded the opportunity to examine the files and did so for several hours on January 11, 1971, and again on January 15, 1971. It is claimed the financial statements were not in the file on January 15, indicating they were there on January 11; however, there is no evidence Rekas brought this to the attention of the custodian or anyone else. The Council *1097 made the files available in the first instance and no one knows what happened to the financial data. It appears someone made use of the data for reasons of his own, certainly not to benefit the applicant. In making the financial data available to anyone, the Committee exceeded its authority as the data was not a public record.
 6 The defendants also contend the Council's consideration, preparation and adoption of an ordinance is a legislative matter, and the courts have no authority to interfere; therefore mandamus will not lie. We agree. (People ex rel. Bartlett v. Dunne (1906), 219 Ill. 346; People ex rel. Bartlett v. Busse (1909), 238 Ill. 593; Spurling v. Reich (1949), 336 Ill. App. 576.) The granting of franchises by municipalities to utility companies or private persons to use the streets in the public interest constitutes an exercise of the city's legislative authority. (People v. Commonwealth Edison Co. (1941), 376 Ill. 70; Withers v. City of Granite City (1961), 23 Ill.2d 156.) The City's authority to regulate "cable television" was upheld in Illinois Broadcasting Co. v. City of Decatur (1968), 96 Ill. App.2d 454.
 7 We hold the Council, while engaged in a legislative matter such as the instant case, is not subject to mandamus. We further hold the financial data in question is not a public record and while the Council did make the data available in the first instance to the persons now complaining, it is under no duty or obligation to replace the missing documents in the file; therefore mandamus will not lie. The complaint is not well founded in law and was properly dismissed.
For the foregoing reasons, the judgment of the Circuit Court is affirmed.
Affirmed.
BURMAN, P.J., and ADESKO, J., concur.