(No. 50131.—

KAREN LOPEZ *et al.*, Appellants, v. JOSEPH FITZ-
GERALD, JR., *et al.*, Appellees.

*Opinion filed Jan. 26, 1979.—Supplemental opinion
filed on denial of rehearing May 30, 1979.*

CLARK, J., GOLDENHERSH, C.J., and MORAN, J., dissenting.

Robert Masur, Fred L. Lieb, Seymour J. Mansfield, Gordon Waldron, and Anthony J. Fusco, Jr., of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Robert L. Thompson, and Kathleen Ransford, of counsel), for appellees.

Robert J. Vollen, Douglass W. Cassel, Jr., James A. Geocaris, and Robert L. Graham, of Chicago, for *amici curiae* League of Women Voters of Illinois *et al.*

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiffs, individuals and community groups, filed a class action complaint for injunctive and declaratory relief seeking access to building inspection reports made by the Department of Buildings of the city of Chicago (Department). The individual plaintiffs alleged they had sought and were denied access to building inspection reports of buildings in which they resided or in which they contemplated renting an apartment or store. The reports were made following inspections at plaintiffs' or others' requests. The complaint further alleged that the Department denied the organizational plaintiffs access to reports concerning buildings within their neighborhoods. The circuit court of Cook County struck plaintiffs' class action allegations. It allowed plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. The court declared that reports of building inspections and all other records prepared and kept by the Department of Buildings are public records under the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par.

43.101 *et seq.*) and section 41—7 of the Municipal Code of Chicago. The court further ordered that plaintiffs were entitled to inspect and to copy or receive copies of those records. The appellate court reversed the declaratory judgment order on the grounds that initial investigation reports are not public records either by statute or at common law since they are not final, but rather preliminary. (53 Ill. App. 3d 164.) In its supplemental opinion on denial of rehearing, the appellate court stated that the trial court's order was overly broad and refused to disturb the trial court's striking of the class action allegations. This court allowed plaintiff's petition for leave to appeal (65 Ill. 2d R. 315).

The issue presented is whether the building investigation reports to which plaintiffs seek access are public records open to public scrutiny. Count I of plaintiffs' second amended complaint alleged that the investigation reports were public records under sections 41—6 and 41—7 of the Municipal Code of Chicago and that plaintiffs had a right of access to those records, presumably at common law. Count II alleged a right to inspect the records under the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.101 *et seq.*).

The reports to which plaintiffs seek access were made following inspections pursuant to provisions of the Municipal Code of Chicago. Section 13—1 of the Code establishes a Department of Buildings. The Code provides for the appointment of technically trained inspectors to head the bureaus of electrical inspection, building inspection, sanitary inspection, plumbing inspection, elevator inspection, ventilation inspection, housing inspection, survey inspection, housing complaints and compliance (sec. 13—1 *et seq.*). Section 41—6 of the Code provides that it is the duty of the commissioner of buildings to cause an investigation to be made of all complaints filed with the Department and to keep a record of such investigations on

file together with the reports and findings signed by the inspector or inspectors. Section 41—7 provides that, when such investigation or investigations disclose violations of the Municipal Code which are likely to endanger life, safety or health, the commissioner of buildings must give notice in writing to the owner, occupant, lessee or person in possession, charge or control of the premises to remedy the problem in the time designated in the notice, which must not be more than 15 days after the service of such notice. Section 46—5 repeats the notice and repair requirements. The Code also makes provision for compliance hearings (sec. 13—27).

Where the repairs, changes, alterations or requirements ordered by the notice are not made or performed to the satisfaction of the commissioner within the time specified in the notice (sec. 41—7) or within the time provided in section 13—27 governing compliance hearings, the matter must be referred to the corporation counsel for prosecution. Section 41—7 provides further that such investigations, including the contents of inspections, shall be preserved as public records and shall be admitted in the trial of the cause as *prima facie* evidence as to the contents thereof. The Municipal Code contains no provision for disclosure of investigation reports to members of the public.

The Local Records Act is entitled "An Act in relation to the destruction and preservation of public records ***." It establishes a program for the management of local records in order to promote economy and efficiency in the day-by-day record-keeping activities of local governments and to facilitate and expedite governmental operations (Ill. Rev. Stat. 1975, ch. 116, par. 43.102).

The Act defines a public record as "any book, paper, map, photograph, or other official documentary material, regardless of physical form or characteristics, made, produced, executed or received by any agency or officer

pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer, or any successor thereof, as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein. Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included within the definition of public record." (Ill. Rev. Stat. 1975, ch. 116, par. 43.103.) As originally enacted, and currently in force, the Act contained a general provision that any person shall be supplied with copies of public records reproduced in accordance with the provisions of the Act:

> "In any case where public records have been reproduced by photography, microphotography or other reproductions on film, in accordance with the provisions of this Act, any person or organization shall be supplied with copies of such photographs, microphotographs, or other reproductions on film upon payment of the required fee to the officer having custody thereof. The fee required to be paid shall be the actual cost of such copies, plus a service charge of 15% of such cost." (Ill. Rev. Stat. 1975, ch. 116, par. 43.113.)

Despite the presence of this general provision, the Act was amended, effective October 1972, to include an express provision that reports and records of the obligation, receipt and use of public funds of units of local government and school districts are public records available for inspection by the public under specified limitations as to time, place and circumstances (Ill. Rev. Stat. 1975, ch. 116, par. 43.103a). This brought the Act into express conformity with article VIII, section 1(c), of the Illinois Constitution of 1970, which mandates public access to such records.

We find insufficient basis in the Local Records Act to justify access by plaintiffs to reports by building inspectors. In reaching this conclusion we have examined the statutory language and its context, as well as the statutory purpose (see *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 507). The title and declaration of purpose for the Local Records Act manifest a statutory concern for determining which local governmental records should or should not be preserved on film. The definition of public records is broad and serves to ensure that no important records will be destroyed. Because the Local Records Act is concerned with the preservation of records, a cursory provision referring to public access to preserved records found toward the end of the Act cannot be construed to establish a basis for disclosure of specific records preserved. Different considerations are involved in determining which records are available for public disclosure than are raised in determining whether records should be preserved by a unit of government. The basis for determining which records are open to disclosure must be found outside the Local Records Act. Section 13 of the Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.113) merely provides for the disclosure of preserved records to which the public is otherwise entitled to access.

An examination of an amendment to the Local Records Act and comparison with disclosure statutes from other jurisdictions further indicate that section 13 (Ill. Rev. Stat. 1975, ch. 116, par. 43.113) is not a general disclosure-authorization provision. Section 3a of the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.103a) provides expressly for access to local financial records. The amendment assists in determining the legislative intent as to provisions of the unamended statute (see *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 373) and indicates that section 13 is not an access statute. The

General Assembly found it necessary to provide expressly for the disclosure of financial records to bring the Local Records Act into conformity with article VIII, section 1(c), of the Illinois Constitution of 1970. Were section 13 a general access statute, the amendment would have been superfluous, and this court will not assume the legislature engaged in a useless act (*Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 524).

The limitations as to the circumstances under which financial records are open to the public under section 3a also support the conclusion that section 13 is not an access statute. Financial records are available only at certain times, in certain places, and as expressly limited by the right to privacy. General disclosure statutes from other jurisdictions contain both grants of rights of access and express exemptions and limitations on disclosure. (See *e.g.,* 5 U.S.C. sec. 552 (1976); Cal. Gov't Code sec. 6254 (West 1978 Supp.); Md. Ann. Code art. 76A, sec. 3 (1978 Supp.); Mass. Ann. Laws ch. 4, sec. 7, cl. 26 (Michie/Law. Co-op 1978 Supp.) By contrast section 13 of the Local Records Act contains no limitations at all on the asserted right of access, an indication that the General Assembly was not addressing disclosure questions.

Plaintiffs argue that the investigation reports are public records under the definition contained in the Local Records Act and the Municipal Code of Chicago. However, the definition in the Local Records Act, as already noted, is concerned with the decision of whether a document should be preserved on film, not whether it should be open to public access. Therefore, even if the investigation reports fall within the definition of public records under the Local Records Act, it does not follow that they are subject to public disclosure. "Whether a record is to be regarded as a public record in a particular instance will depend upon the purposes of the law which will be served by so classifying it. A record may be a public record for

one purpose and not for another." *MacEwan v. Holm* (1961), 226 Or. 27, 36, 359 P.2d 413, 417.

The term "public record," as used in the Municipal Code, is also directed to a circumstance other than public access to records. Section 41—7 directs that investigation reports be preserved as public records and be admitted at trial as *prima facie* evidence of code violations. Thus the Code is concerned with the preservation of the reports for use against the landlords in prosecutions for code violations. Direct access by members of the public is not contemplated.

The issue now before the court is whether inspection reports are public records available to the public at common law, since neither the Local Records Act nor the Municipal Code provide for public access.

The plaintiffs point to a general public policy favoring open government in support of their contention that building inspection reports are open to public access (*Weinstein v. Rosenbloom* (1974), 59 Ill. 2d 475, 482; *People ex rel. Gibson v. Peller* (1962), 34 Ill. App. 2d 372, 374; *Nowack v. Auditor General* (1928), 243 Mich. 200, 203, 219 N.W. 749, 750). However, countervailing factors may dictate nondisclosure. Although it recognized a broad statutory right of access, even to preliminary data collected for a report on radiation, the court in *MacEwan v. Holm* (1961), 226 Or. 27, 44-45, 359 P.2d 413, 420-21, stated:

> "The public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it. *** Even where the request is made for a lawful purpose the public interest may require that the information be withheld. Thus where the information is received in confidence, it may be proper to refuse access to it. *** There

.are other circumstances which will justify nondisclosure. Thus it has been suggested that inspection may be denied where a citizen seeks documentary evidence in the hands of a district attorney, minutes of a grand jury, or evidence in a divorce action ordered sealed by the court."

The *MacEwan* court proposed a balancing test to determine whether specific documents should be open to the public. The interest of citizens in knowing what the government is doing and their proprietary interest in public property should be weighed against the interest of the public in having the business of government carried on efficiently and without undue interference.

Additional elements must be included in the equation in determining whether building investigation reports should be open to public access. The investigatory reports to which plaintiffs seek access are only the first stage in the process of finding building violations and ensuring that they will be corrected. The investigation report must be evaluated, and an administrative decision must be made whether violations are present. If violations are found to be present, the Municipal Code then provides for notice, compliance hearings and, ultimately, prosecution if violations are not corrected. Considerations of privacy and due process militate against public access to initial investigation reports without notice to the building owner and without an opportunity for him to respond.

This court has recognized a right to privacy, a right to be left alone (*Leopold v. Levin* (1970), 45 Ill. 2d 434, 440-41). Article I, section 6, of the Constitution of 1970 also recognizes privacy rights against at least some intrusions (see *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 522-24). Article I, section 12, expressly recognizes a right to a remedy against all injuries to privacy or reputation. The United States Supreme Court in *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 314-15,

56 L. Ed. 2d 305, 313, 98 S. Ct. 1816, 1821-22, has recognized an employer's privacy right against warrantless intrusions by government safety inspectors into work areas not open to the public. The context is distinguishable, but the recognition of privacy interests indicates the existence of privacy considerations weighing against disclosure of initial investigation reports concerning rental properties.

As the appellate court noted in *People ex rel. Better Broadcasting Council, Inc. v. Keane* (1973), 17 Ill. App. 3d 1090, 1092-93: "The people's right to know, however, must be balanced by the practical necessities of governing. Public officials must be able to gather a maximum of information and discharge their official duties without infringing on rights of privacy. \*\*\* Therefore, it is important to consider whether disclosure would constitute an invasion of privacy; whether there could be prejudice to private rights or give an unfair competitive advantage; \*\*\* whether it would discourage frankness; and whether it could cut off sources of information upon which a government relies." (See also *Craemer v. Superior Court* (1968), 265 Cal. App. 2d 216, 222, 71 Cal. Rptr. 193, 199, noting that the public good is not served by disclosures which undermine the sense of security for individual rights.) Even the plaintiffs recognize, in citing *United States v. Mitchell* (D.C. Cir. 1976), 551 F.2d 1252, 1260, *rev'd sub nom. Nixon v. Warner Communications, Inc.* (1978), 435 U.S. 589, 55 L. Ed. 2d 570, 98 S. Ct. 1306, that the policy favoring disclosure must concede when justice requires.

Detailed public disclosure statutes from other States contain express exemptions from disclosure for investigative reports compiled for law-enforcement purposes. (See, *e.g.*, Cal. Gov't Code sec. 6254 (West 1978 Supp.); Md. Ann. Code art. 76A, sec. 3(i) (1978 Supp.); Mass. Ann. Laws ch. 4, sec. 7, cl. 26(f) (Michie/Law. Co-op 1978 Supp.).) The Federal Freedom of Information Act (5

U.S.C. secs. 552(b)(7)(A), (B), (C) (1976)) expressly exempts from disclosure investigatory records compiled for law-enforcement purposes to the extent that production of such records would, among other things, interfere with enforcement proceedings, deprive a person of a right to a fair trial, or constitute an unwarranted invasion of privacy. The Federal Freedom of Information Act protects investigatory records compiled for enforcement of all laws, not only criminal laws. *Moore-McCormack Lines, Inc. v. I.T.O. Corp.* (4th Cir. 1974), 508 F.2d 945, 949 (citing the legislative history); *Luzaich v. United States* (D. Minn. 1977), 435 F. Supp. 31, 34, *aff'd without opinion* (8th Cir. 1977), 564 F.2d 101.

In *Wisconsin v. Constantineau* (1971), 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507, the United States Supreme Court held that where a person's reputation is threatened by governmental action, due process requires that he be given notice and an opportunity to be heard before the government may proceed. There the police caused a notice to be posted in all retail liquor stores that sales or gifts of liquor to the plaintiff were forbidden for one year. *Constantineau* was explained in the subsequent case of *Paul v. Davis* (1976), 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155, which held that due process rights are triggered only where governmental action deprives the defendant of a right under law, such as the right to purchase liquor. The public release of initial investigation reports indicating building code violations, without notice and a hearing, threatens the property owner's ability and right to lease his property, and otherwise reap financial benefit from his property, thus calling for due process safeguards under both the Federal and Illinois constitutions.

To release investigative reports without notice to the owner and an opportunity to be heard would impinge upon the owner's due process rights. To release initial and

unevaluated investigation reports threatens privacy interests. Public disclosure of such reports would also tend to impair the efficiency of day-to-day activities of and investigations by the Department of Buildings. In the absence of factors supporting disclosure other than a general policy of openness in government and the plaintiffs' interest in the condition of buildings, and in the face of strong countervailing factors, investigative reports are not open to public access. If the investigative reports become part of a court record, rules governing public access to such records would govern.

The plaintiffs place great reliance on trial and intermediate appellate court cases from other jurisdictions which have permitted the release of investigatory reports. However, the statutory and factual circumstances for each of the cases render them inapplicable in other jurisdictions and other contexts. (See, *e.g., Citizens For Better Care v. Department of Public Health* (1974), 51 Mich. App. 454, 215 N.W.2d 576 (information compiled for investigations relative to the licensing of nursing homes was available, since it had already been disclosed to the parties regulated); *Young v. Town of Huntington* (1976), 88 Misc. 2d 632, 388 N.Y.S.2d 978 (holding that disclosure exemptions are not applicable to noncriminal investigations under a New York statute, but noting that a different rule prevails under the Federal Freedom of Information Act); *Martinez v. Libous* (1975), 85 Misc. 2d 186, 378 N.Y.S.2d 917 (the statute expressly provided for disclosure of all records of the department in question).) Those cases can be countered by cases from other jurisdictions which have found investigatory records unavailable for public disclosure under the applicable factual and legal circumstances. See, *e.g., Atchinson, Topeka & Santa Fe Ry. Co. v. Kansas Com. on Civil Rights* (1974), 215 Kan. 911, 529 P.2d 666 (civil-rights-investigation file); *Superintendent, Maryland State Police v. Henschen* (1977), 279 Md. 468,

369 A.2d 558 (reports gathered in investigating whether gun permit should be revoked); *Kottschade v. Lundberg* (1968), 280 Minn. 501, 160 N.W.2d 135 (tax-valuation appraisal cards); *Wiley v. Woods* (1958), 393 Pa. 341, 141 A.2d 844 (data pertaining to petition for rezoning).

*Linder v. Eckard* (1967), 261 Iowa 216, 152 N.W.2d 833, citing the weight of authority, held that written appraisals of property in a proposed urban renewal area were preliminary matters of investigation which were not public records open to public access. Our appellate courts have adhered to this preliminary-records exception. (*People ex rel. Better Broadcasting Council, Inc. v. Keane* (1973), 17 Ill. App. 3d 1090; *People ex rel. Hamer v. Board of Education* (1970), 130 Ill. App. 2d 592.) Privacy, due-process and governmental-efficiency interests are served by this rule. However, because of technical, definitional problems raised in determining whether a particular record is a "preliminary" record, we do not base our conclusion that the investigative reports at issue here are not open to public access on the preliminary-records exception.

Plaintiffs' final contention is that the trial court erred in striking the class action allegations. Because we have determined that there is no public right of access to initial building investigation reports, we need not address this issue.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

Disclosure of government records is a two-edged sword. While one edge cuts through layers of bureaucracy to expose corruption, incompetence and waste, the other edge inadvertently can cut through innocent private citizens' legitimate expectations of privacy, exposing the

most intimate details of their lives, or, perhaps, exposing them to public scorn due to the recorded, but unfounded, suspicions of one misguided, minor government official. Nonetheless, the importance of an informed citizenry to the assumptions which underlie our constitution and statutes demands that, even in the absence of an express statutory mandate, we undertake the admittedly difficult task of providing the maximum amount of public access to government records which is consistent both with the deference due our coordinate branches of government and with citizens' legitimate expectations of privacy. Where there is an express statutory mandate, we ought not subvert its intent through unduly restrictive construction of its unambiguous and constitutionally sound language. I find today's decision wanting in these regards.

The plaintiffs in this case, certain individuals and community organizations, filed a two-count amended complaint in the circuit court of Cook County seeking declaratory and injunctive relief granting them access to inspect and copy reports of building inspections prepared by employees of the Department of Buildings of the city of Chicago pursuant to sections 41—6 and 41—7 of the Municipal Code of Chicago. Count I was based on an alleged common law right of access to the records of public agencies and count II was based upon section 13 of the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.113). The circuit court apparently granted plaintiffs' motion for summary judgment as to count II, but made no express ruling as to count I.[1] The Appellate Court, First

---

[1] The precise language of the circuit court's order is in part as follows:

"1. Reports of Building inspections and other records prepared and kept by the Department of Buildings of the City of Chicago pursuant to section 41—6 and section 41—7 of the Municipal Code of Chicago are declared to be public records under the Illinois Local Records Act, Ill.

District reversed (53 Ill. App. 3d 164; see also 53 Ill. App. 3d 164, 169 (supplemental opinion on denial of re-hearing)), reasoning as follows: (1) Plaintiffs had no right to inspect any reports, under either common law or the Local Records Act, until "final action" has been taken by the Department. (See 53 Ill. App. 3d 164, 167-68.) (Significantly, perhaps, the appellate court did not give as an example of "final action" the decision not to prose-cute.) (2) After "final action" either "final reports" or "official reports" are to be made available pursuant to the Local Records Act. (See 53 Ill. App. 3d 164, 171 (supplemental opinion on denial of rehearing).) (It is not clear, however, whether, under the appellate court's reasoning, all reports are "final" or "official" after "final action"). (3) There was no need for a modified injunction providing access to those reports which are available pursuant to the Local Records Act.

The majority of this court now affirms the judgment of the appellate court, reasoning: (1) Section 13 of the Local Records Act creates no independent right of access to *any* records under *any* circumstances, but rather, "merely provides for the disclosure of preserved records to which the public is otherwise entitled to access" (76 Ill. 2d at 116); and (2) "[A]t common law" (76 Ill. 2d at 118), the public apparently never is entitled to inspect and copy "investigative reports" except that "[i]f the investigative reports become part of a court record, rules governing public access to such records would govern" (76 Ill. 2d at 122). I disagree on both points.

---

Rev. Stat. 1974, Chap. 116, sec. 43.101 *et seq.* and sec. 41—7 of the Municipal Code of Chicago." (*Lopez v. Fitzgerald* (circuit court of Cook County, Feb. 10, 1976), No. 75 CH 675 (order granting plaintiffs partial summary judgment).)

The court later indicated, in a colloquy with counsel, that the intent of the above order was to grant injunctive, as well as declaratory relief to plaintiffs, and counsel for defendants so stipulated.

A brief review of certain provisions of the Local Records Act is in order. Section 2 of the Act provides:

"This Act declares that a program for the efficient and economical management of local records will promote economy and efficiency in the day-by-day record-keeping activities of local governments and will facilitate and expedite governmental operations." (Ill. Rev. Stat. 1975, ch. 116, par. 43.102.)

I would not exclude private suits to enforce statutory requirements (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—15 (authorizes private actions by owners or tenants within 1,200 feet against violations of building code)) or citizen monitoring of government from the category of functions which "facilitate and expedite government operations." Section 3 of the Act provides:

"Except where the context indicates otherwise, the terms used in this Act are defined as follows:
\* \* \*
'Public record' means any book, paper, map, photograph, or other official documentary material, regardless of physical form or characteristics, made, produced, executed or received by any agency or officer pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer, or any successor thereof, as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein." (Ill. Rev. Stat. 1975, ch. 116, par. 43.103.)

Section 13 of the Act provides:

"In *any* case where public records have been reproduced by photography or microphotography, or other reproductions on film, in accordance with the provisions of this Act, *any person or organization shall be supplied with copies* \*\*\* upon payment of the required fee." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 116, par. 43.113.)

It is undisputed that the reports at issue in count II of

plaintiffs' amended complaint fall within the definition of public records contained in section 3 of the Act, that these reports have been reproduced on microfilm, and that section 13 provides that copies of microfilmed public records "shall be supplied" to the public upon payment of a fee. The court, however, today holds, in effect, that the words "shall be supplied" really mean *shall not be supplied unless the public "is otherwise entitled to access"* to them.

In reaching this conclusion, the court relies upon the following arguments, none of which persuade me to abandon the strong presumption that the legislature meant precisely what it said (see generally, *e.g., Illinois Telephone Association v. Illinois Commerce Com.* (1977), 67 Ill. 2d 15, 20-21; *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 503, cert. *denied and appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612; *Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 428):

> (1) "Because the Local Records Act is concerned with the preservation of records, a cursory provision referring to public access to preserved records found toward the end of the Act cannot be construed to establish a basis for disclosure of specific records preserved." 76 Ill. 2d at 116.

> (2) Because the legislature found it necessary to amend the Act (by adding section 3a (Ill. Rev. Stat. 1973, ch. 116, par. 43.103a)) to provide expressly for public inspection of certain financial records, section 13 must be presumed not previously to have provided for public access to microfilmed documents.

> (3) Unlike section 3a of the Act and unlike disclosure statutes from other jurisdictions, "section 13 of the *** Act contains no limitations at all on the asserted right of access, an indication that the General Assembly was not addressing

disclosure questions" (76 Ill. 2d at 117).

First, I do not find the reference to public access in section 13 "cursory." The legislature need not use exclamation points and exhaustive statements of legislative purpose to make its will known. I find the phrase "any person or organization shall be supplied with copies" (Ill. Rev. Stat. 1975, ch. 116, par. 43.113) more than adequate. Nor, as indicated above, is disclosure to the public foreign to the stated purposes of the Act.

Second, as originally enacted, the Local Records Act only provided a right to copies of those public records which had been reproduced on microfilm, etc. Section 3a, however, provides for public inspection of all "reports and records of the obligation, receipt and use of public funds" (Ill. Rev. Stat. 1975, ch. 116, par. 43.103a), regardless of whether such reports and records otherwise fall within the definition of "public records" and regardless of whether they have been reproduced photographically, as our constitution now requires (Ill. Const. 1970, art. VIII, sec. 1(c)).

Third, the absence of internal limitations upon the right of access created by section 13 is no excuse for ignoring the unambiguous language of the statute. That such limitations would have been salutary does not render the statute unconstitutional in their absence, as applied to the facts of this case. (See *Paul v. Davis* (1976), 424 U.S. 693, 708-09, 47 L. Ed. 2d 405, 418, 96 S. Ct. 1155, 1164.) I therefore cannot concur in the court's evisceration of the plain language of section 13.

Even if I were to accept the court's interpretation of the statute, I would find some support in the common law for the right of access claimed here. (See, *e.g., People ex rel. Gibson v. Peller* (1962), 34 Ill. App. 2d 372, 374.) Although the parties have not directed our attention to a single case in which this court expressly recognized a

common law right to public inspection of the records of local government, the facts of this case, including, in particular, the private right of action created by section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15), give rise to such a right, in my opinion. Accordingly, once the city has, expressly or by default, determined whether to prosecute a given alleged violation, I would allow public inspection of the investigator's report. (If the matter is litigated, our courts are sophisticated enough in their understanding of government to be able to determine when inaction by the city represents a decision not to prosecute.) I would, however, in the interests of fairness, require the plaintiffs to give adequate notice to the owner of the premises inspected, including a reasonable opportunity to supplement the record with evidence of compliance before statements as to alleged noncompliance are made publicly available, as well as an opportunity to object to the release of trade secrets or other intensely personal information.

The problems of fashioning a fair but effective means of assuring the public's access to the information necessary to control their government are undeniably enormous, but not unworthy of the effort necessary. In the words of Mr. Justice Brandeis:

> "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." (L. Brandeis, Other People's Money 62 (1933), quoted in *Buckley v. Valeo* (1976), 424 U.S. 1, 67, 46 L. Ed. 2d 659, 715, 96 S. Ct. 612, 658.)

If there is a silver lining to the pall cast by the court's decision, it is that the legislature's attention almost certainly now will be redirected to these problems.

GOLDENHERSH, C.J., and MORAN, J., join in this dissent.

## Supplemental Opinion on Denial of Rehearing

Plaintiffs have filed a timely petition for rehearing which seeks a modification of the disposition in this cause but acquiesces in the basic conclusions reached in the opinion. Plaintiffs' petition accurately sets forth our holding that once a notice of violation has been sent to a building owner and he has been given an opportunity to respond at a compliance hearing, building inspection reports on which the notice and hearing were based may be open to public access. Plaintiffs argue that our holding entitles plaintiff Central Lakeview Neighbors to records it sought for a building it alleged had been the subject of court proceedings for approximately two years, that plaintiff Lloyd Parker is entitled to records for a building he alleged had been the subject of a compliance hearing, and that the remaining plaintiffs should be provided a hearing on their requests for reports even though they did not allege that the owners of the buildings which were the subject of those reports had received notice and a compliance hearing.

Plaintiffs' petition for rehearing is denied. However, we modify our disposition as to plaintiffs Central Lakeview Neighbors and Lloyd Parker. Central Lakeview Neighbors is entitled to the inspection report it seeks because the defendants admitted it had been at issue in court proceedings. We remand for a hearing to determine whether the owner of the building to whose inspection reports Lloyd Parker sought access had received notice and a compliance hearing concerning those reports. If the owner had received the requisite notice and opportunity to be heard, then, consistent with our opinion, Parker is entitled to examine those inspection reports. The remaining plaintiffs did not allege that the building owners had received a notice and hearing concerning any of the reports to which they sought access. We therefore find no reason to remand for a hearing on their requests for records.

On April 12, 1979, approximately eight weeks after their petition for rehearing was due and filed, plaintiffs filed a motion for leave to file a brief in support of their petition for rehearing. The motion was entered and continued for consideration with plaintiffs' petition for rehearing. The motion and brief call the court's attention to an additional authority, not previously cited by either party. The plaintiffs seek to file the supplemental brief for the express dual purpose of supporting the petition for rehearing and attacking the bases of the opinion.

Although plaintiffs' motion was filed after their petition for rehearing was due, we shall, in the interest of justice, take judicial notice of the additional authority plaintiffs cite in their motion and supplemental brief. The cited statute provides that *"[w]hen the building code department of a municipality \*\*\* determines a building code violation exists* it shall cause a notice of such violation to be posted in a conspicuous place near the main entrance of such building." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111½, par. 3402.) The notice is to be removed by the department as soon as the cause of the violation has been corrected. Ill. Rev. Stat. 1977, ch. 111½, par. 3402.

We read the statute in light of the important constitutional safeguards with which our opinion was concerned and therefore do not consider it inconsistent with our opinion. The statute, although it became effective in 1963, has never been interpreted, and there are no committee comments explaining it. Therefore, plaintiffs concede, it is an unresolved question as to what the statute means by a determination by the building code department that a violation exists. We read the statutory phrase, *"determines a building code violation exists"* (emphasis added) (Ill. Rev. Stat. 1977, ch. 111½, par. 3402), which is the prerequisite for the posting of a notice of violation, to mean a finding following a notice to the building owner and an opportunity to be heard. That reading takes into

account building owners' due process rights and effects the principle of statutory construction which mandates that, where reasonable, statutes will be construed to avoid an unconstitutional result (*Anderson v. Schneider* (1977), 67 Ill. 2d 165, 176). Our opinion likewise takes into consideration the important constitutional rights implicated in this case, and we therefore see no need to modify our holding that a building owner must be provided a notice and an opportunity to be heard before a building investigation report may be open to public scrutiny.

MR. JUSTICE CLARK, dissenting:

I dissent from the denial of plaintiffs' petition for rehearing. First—I do not agree that the plaintiffs have "acquiesce[d] in the basic conclusions reached in the [original] opinion." (76 Ill. 2d at 130.) Second, although the court's supplemental opinion on denial of rehearing takes a step in the right direction, it fails to come to grips with the problem posed by cases in which the Department, for whatever reason, has not issued a notice of violation and held a compliance hearing. The records compiled in such cases could be vital to the revelation of institutional corruption and incompetence, and the logic of the majority's position compels the release of such records, with appropriate safeguards.

In its original opinion in this cause, the court made the following statement: "To release investigative reports without notice to the owner and an opportunity to be heard would impinge upon the owner's due process rights. To release initial and unevaluated investigation reports threatens privacy interests. Public disclosure of such reports would also tend to impair the efficiency of day-to-day activities of and investigations by the Department of Buildings. In the absence of factors supporting disclosure other than a general policy of openness in government and the plaintiffs' interest in the condition of

the buildings, and in the face of strong countervailing factors, investigative reports are not open to public access. If the investigative reports become part of a court record, rules governing public access to such records should govern." (76 Ill. 2d at 121-22.) In its supplemental opinion, however, the court states that "[p]laintiffs' petition accurately sets forth our holding that once a notice of violation has been sent to a building owner and he has been given an opportunity to respond at a compliance hearing, building inspection reports on which the notice and hearing were based may be open to public access." (76 Ill. 2d at 130.) The court then goes on to hold that "Central Lakeview Neighbors is entitled to the inspection report it seeks because the defendants admitted it had been at issue in court proceedings," and that if "the owner of the building to whose inspection reports Lloyd Parker sought access *** had received the requisite notice and opportunity to be heard, then, consistent with our opinion, Parker is entitled to examine those inspections reports." 76 Ill. 2d at 130.

Since the supplemental opinion does not purport to modify the original opinion, the two opinions must be intended to be reconcilable. Such reconciliation leads to the following conclusions: (1) The "strong countervailing factors" which weigh against public disclosure of "investigative reports" all disappear once the owner of the building has "received the requisite notice and opportunity to be heard," and a compliance hearing before the Department of Buildings satisfies the hearing requirement. (2) "The rules governing public access to [court] records" always mandate release of inspection reports of the Department of Buildings which have been "at issue" in court proceedings, and the circuit court does not have discretion to seal such records.

The question remains however, what about situations in which the city does not issue a notice of violation and

hold a compliance hearing, such as, for example, where a building inspector has accepted a bribe in return for not reporting a violation, or where another official of the Department has accepted a bribe in return for squelching an investigation of a reported violation? The majority's answer apparently is that the records in such cases may go undisclosed, because a hearing before the Department of Buildings is an absolute prerequisite to disclosure, in order to protect the property and privacy interests of building owners. The owners' rights of privacy and property can be adequately safeguarded, however, without covering up evidence of incompetence and corruption on the part of public officials. All that is necessary is that the owner of the property in question be given notice of the disclosure sought by a given individual or group, and an opportunity to supplement the record before its disclosure. Under the law of defamation, an individual or group which obtained disclosure of such a supplemented record would, at its peril, ignore the owner's side of the story. See *Troman v. Wood* (1975), 62 Ill. 2d 184.

Accordingly, I would allow the petition for rehearing, and grant judgment for plaintiffs in accordance with the views expressed in my dissent from the court's original opinion in this cause.

GOLDENHERSH, C.J., and MORAN, J., join in this dissent.