■ In the Matter of CHARLES E. SIGETY, Doing Business as FLORENCE NIGHTINGALE NURSING HOME, Appellant, v RICHARD V. HORAN, as Welfare Inspector General of the State of New York, Respondent.—Judgment, Supreme Court, New York County, entered October 10, 1975, dismissing as moot the petition of petitioner to restrain respondent from releasing to the public a report pertaining to Florence Nightingale Nursing Home or, in the alternative, to permit petitioner to review contents of the report prior to any public release, affirmed without costs and disbursements. We agree with Special Term that the enactment of section 1 of chapter 654 of the Laws of 1975, effective September 1, 1975 (Public Health Law, § 2805-e), has rendered the instant proceeding moot. That statute requires nursing homes to make inspection reports prepared by governmental agencies available for public inspection. Further, the "office of the commissioner and each regional office of the department shall make available for public inspection * * * all financial and inspection reports of residential health care facilities filed with or issued by the department" (Public Health Law, § 2805-e, subd 2). The new provision is part of a broad scheme by which governmental agencies are required to supervise the finances of and the health care provided by nursing homes (See L 1975, chs 652, 653, 655). Its passage is evidence of a strong legislative intention to make public the results of such investigations. Petitioner contends that the statute pertains solely to "financial" and "inspection" reports and not to "investigation" reports. He further characterizes the document in issue here as an "investigation report". To adopt the hypertechnical reading which petitioner attempts to place on the enactment would frustrate the purpose of the statute. Respondent's investigation related to matters which the Legislature has deemed worthy of public exposure. Accordingly, we view section 1 of chapter 654 of the Laws of 1975 as applying to the report in question. Note is taken of subdivision 9 of section 48 of the Executive Law which requires respondent "To do all things necessary or convenient to carry out the functions, powers and duties set forth * * * to the extent they conform with *applicable* federal requirements, if any" (emphasis supplied). Petitioner contends that he is entitled under this statutory provision to preview the respondent's report prior to any public release. The only support for this contention is reference to Federal statutes and regulations affording a provider of services the right to review evaluative reports (See, e.g., US Code, tit 42, § 1306, subds [d], [e]). However, these statutes have no relation to State supervision of nursing home facilities. While the policy underlying the provisions cited may be desirable, it is clear that Federal law imposes no requirement of prior review upon State agencies. This subject, in light of the public policy delineated in the broad statutory scheme alluded to above, is more properly one for the Legislature. Concur—Stevens, P. J., Lupiano, Lane and Nunez, JJ.; Kupferman, J., dissents in part in the following memorandum: I concur with the majority, although the matter is not free from doubt, and would affirm the dismissal of the petition to restrain the Welfare Inspector General from releasing the report in this matter. I differ, however, in the determination which refuses the petitioner the opportunity to see the report before it is released and to comment thereon. The verified petition in this matter was filed in January, 1975, but the determination by the court at Special Term was not until September, 1975, seemingly to allow for the effective date of

an amendment to sections 2805-e and 2896-h of the Public Health Law to require the opportunity for public inspection "of all financial and inspection reports of residential health care facilities filed with or issued by the Department." Prior to September 1, 1975 there was no specific requirement for public inspection. There is also a question as to whether this report denominated by the Welfare Inspector General as an investigative report falls within the category provided of "financial and inspection" provided for in subdivision 2 of section 2805-e of the Public Health Law. Further, if an investigative report, it becomes an exception to the Freedom of Information Act which provides in section 88 of the Public Officers Law for "Access to. records". Among the exceptions of items not to be made available, is paragraph d of subdivision 7: "part of investigatory files compiled for law enforcement purposes." Nevertheless, I agree that any doubt should be resolved in favor of public disclosure. The other aspect raises an entirely different question. First, the law provides for an opportunity for comment with respect to any evaluation by the "provider of services" inspected. The Florence Nightingale Nursing Home here involved is such a "provider of services" under both Medicare (US Code, tit 42, § 1395 *et seq.)* and Medicaid (US Code, tit 42, § 1396 *et seq.)* Programs. Section 1106-e of the Social Security Act (US Code, tit 42, § 1306-e) provides that no such report may be made public until there has been a reasonable opportunity to review such report and to offer comments with respect thereto. The provisions of the Federal law (and especially so because the Federal Government provides a substantial part of the moneys involved in the programs) are incorporated by virtue of subdivision 9 of section 48 of the Executive Law* as a matter of State requirement with respect to the functions of the Welfare Inspector General. Aside from what I deem to be the requirements of the law in this area, the matter of the fairness doctrine (cf. *Miami Herald Pub. Co. v Tornillo,* 418 US 241), would seem here to apply. On or about January 8, 1975, there appeared in the *Village Voice* of January 13, 1975, a weekly newspaper, an article by Jack Newfield, an investigative reporter, with respect to the report here involved. This was followed up by an article in the *New York Times* of Thursday, January 9, 1975 by John L. Hess. Obviously, the information in these articles came from a "leak", which leak was naturally of concern to the Welfare Inspector General. Thereafter, the petitioner requested an opportunity to see the report prior to its public release with an opportunity to prepare a statement of reply, which was refused, *in toto.* Under the circumstances, the request was clearly reasonable in order to have a balanced presentation, and I would reverse and grant that portion of the relief sought.

---

* Formerly (Executive Law, § 762, subd 9).