Leon D. Lazer, J.
The State’s fundamental public disclosure statute, the Freedom of Information Law (Public Officers Law, art 6; L 1974, ch 578), contains a provision which exempts from inspection information contained in law enforcement investigatory files. When the Building Department of the Town of Huntington relied upon the exemption to deny the petitioner access to its records and was sustained by the Huntington Records Access Appeals Board, he instituted this article 78 proceeding to review the denial. The breadth of the exemption has evolved as the principal issue in the case.
The exemptive provision is section 88 (subd 7, par d) which provides that the right of access to public records under the statute shall not apply to information that is: "d. part of investigatory files compiled for law enforcement purposes.”
Although it is apparent that this language encompasses the relevant files of police and other criminal law enforcement agencies, the critical question is whether it embraces the records of other bodies as well. Indeed, under the purported aegis of section 88 (subd 7, par d), numerous departments and authorities of the State have hastened to adopt regulations shutting off public access to their investigative activities (see, e.g., 5 NYCRR 1.4 [2] [d] [Dept of Commerce]; 14 NYCRR 8.5 [d] [Dept of Mental Hygiene]; 10 NYCRR 50.2 [d] [Dept of Health]; 9 NYCRR 589.8 [Comm on Cable Tel]; 21 NYCRR 501.7 [Atomic and Space Dev Auth]; 21 NYCRR 1076.5 [c] [Triborough Bridge and Tunnel Auth]; 21 NYCRR 1053.5 [c] [New York City Tr Auth]; 21 NYCRR 107.3 [4] [New York State Thruway Auth]; 21 NYCRR 886.20 [f] [Delaware Riv Basin Comm]). If the obligation of such public agencies to *634 enforce the laws under their jurisdiction shields their investigatory records from public scrutiny, then the Freedom of Information Law (the "statute”) has curtailed the public right to disclosure to a degree heretofore unsuspected (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3101.25).
The records petitioner seeks are those which the building department compiled during its investigation of his complaint that construction work at certain town facilities was performed improperly and in violation of the town code. According to the building department director, the investigation is being conducted pursuant to his law enforcement responsibilities as town building inspector (see Town Law, § 138). Because violations of building codes and zoning ordinances enforceable by the building inspector are offenses and not crimes (see, e.g., Executive Law, §§ 385, 396; Town Law, § 268), the merit of the director’s contention that his files are immune from public inspection depends upon the scope of section 88 (subd 7, par d).
Interpretation of the section has been sparse. In Matter of Zuckerman v New York State Bd. of Parole (53 AD2d 405) the Parole Board argued, inter alia, that section 88 (subd 7, par d) protected its minutes from inspection. Declaring that it was "possible” that the minutes contained exempt information but that the exemption required a narrow construction, the court remanded the matter to nisi prius for an in camera inspection. Although Parole Board proceedings are administrative in nature (see People ex rel. Calloway v Skinner, 33 NY2d 23; People ex rel. Maggio v Casscles, 28 NY2d 415), Zuckerman is not dispositive of the breadth issue. Under section 211 of the Correction Law, the police and the District Attorney’s office may be required to furnish the Parole Board with all "existing available records” concerning each prisoner as he is received at a State corrective institution. Obviously, such records may include data from investigation files of criminal law enforcement authorities.
Apart from a brief mention of the exemption in the dissent in Matter of Sigety v Horan (50 AD2d 779) and avoidance of the breadth issue in Martinez v Libous (85 Misc 2d 186) because the records were available for inspection under another statute, the other reported section 88 (subd 7, par d) cases concern the palpably exempt files of District Attorneys (see, e.g., Matter of Dillon v Cahn, 79 Misc 2d 300) and the *635 police (see, e.g., V.F.V. Constr. Co. v Kirwan, 51 AD2d 753; Farrell v Village Bd. of Trustees of Vil. of Johnson City, 83 Misc 2d 125). Thus, the dimensions of the exemption still remain for determination.
It is a basic tenet of statutory construction that the intention of the Legislature must be sought in the words or language of the statute under construction (Department of Welfare of City of N. Y. v Siebel, 6 NY2d 536), and where the Legislature has used general terms and has not either expressly or by implication limited their operation, the courts will not impose a limitation (Matter of Di Brizzi [Proskauer], 303 NY 206). However, a narrower construction may be given general terms where necessary to carry out the intent of the Legislature if some reason for the limitation is found in the context or surrounding circumstances (see People v Sharp, 107 NY 427).
In this State, the term "law enforcement” generally has been employed in the context of criminal law enforcement (see, e.g., CPL 60.45, subd 2, par [b]; 240.10, subd 3; 700.05, subd 6; 710.20, subd 3; Penal Law, § 240.60; Agriculture & Markets Law, § 109; Family Ct Act, § 753-a, subd 1; Executive Law, § 70-a; Correction Law, § 621; Mental Hygiene Law, § 7.17, subd [b]; People v Ronald W, 24 NY2d 732; Albert v Zahner’s Sales Co., 81 Misc 2d 103, affd 51 AD2d 541; Matter of Special Report of Grand Jury of Erie County, 192 Misc 857; but see Social Services Law, § 3520-a, subd 1, par [d]). Nevertheless, the broad interpretation the Federal judiciary gave to an almost identical exemption in the original Federal Information Act creates a real doubt as to the meaning of the New York law. Federal decisions construing a Federal law are highly persuasive to State courts considering a similar State statute, although they are not binding (Matter of Lazarus [Corsi], 268 App Div 547, affd 294 NY 613; Matter of Bank of Richmondville v Graves, 259 App Div 4, affd 284 NY 671; People ex rel. Mosbacher v Graves, 254 App Div 438, affd 279 NY 793; Matter of Howe, 207 Misc 972, affd 286 App Div 892). Where the language of both laws is identical, the history of the Federal law and the intent of Congress have a bearing on the intent of the Legislature on the presumption that the State legislators had the same objective in mind (Matter of Walk, 192 Misc 237) and employed the statutory terms in the same sense, (see Matter of Weiden, 263 NY 107; Dupuy v McColgan, 112 Cal App 2d 237; 82 CJS, Statutes, § 371).
*636 Of course, there are additional matters which may be considered in the search for legislative intent including legislative history (Williams v Williams, 23 NY2d 592), the circumstances surrounding the statute’s passage (Matter of Capone v Weaver, 6 NY2d 307), the general spirit and purpose underlying the enactment (Grannan v Westchester Racing Assn., 153 NY 449), the recitals in the statute’s preamble (Westchester County S.P.C.A. v Mengel, 266 App Div 151, affd 292 NY 121), and the statements of the statute’s draftsmen (Matter of Fisher v New York State Employees’ Retirement System, 279 App Div 315).
When the Freedom of Information Law was enacted in 1974, the existing Federal Freedom of Information Act contained an exemption for "investigatory files compiled for law enforcement purposes” (US Code, tit 5, § 552, subd [b], par [7]). Because of judicial inconsistency as to whether disclosure was required where no enforcement action was contemplated (compare Bristol-Myers Co. v Federal Trade Comm., 424 F2d 935, cert den 400 US 824, with Frankel v Securities & Exch. Comm., 460 F2d 813, cert den 409 US 889), the original language subsequently was amended (see 88 US Stat 1561-1564) and the exemption now clearly includes both types of investigatory files. Even prior to the amendment, however, the exemption was held to apply to files prepared for both civil and criminal law enforcement (see, e.g., Soucie v David, 448 F2d 1067, 1078, n 45; Clement Bros. Co. v National Labor Relations Bd., 282 F Supp 540; Barceloneta Shoe Corp. v Compton, 271 F Supp 591).
The legislative history of the Federal statute demonstrates that uncertainty existed with respect to the meaning of the exemptive language (see Comment, 1974 Wash ULQ 463; Note, 62 Geo LJ 177; Davis, The Information Act: A Preliminary Analysis, 34 U Chi L Rev 761). The Senate committee report stated that the exemption pertained to "files prepared by Government agencies to prosecute law violators” (see S Rep No. 813, 89th Cong, 1st Sess [1965]), language which could be interpreted to refer to the criminal law (Davis, supra, p 799). But the House committee reported that the exemption covered investigatory files related to the enforcement of "all kinds of laws, labor and securities laws as well as criminal laws” (HR Rep No. 1497, 89th Cong, 2d Sess [1966]) and the Federal courts apparently adopted the House construction.
New York’s history is strikingly different. A Freedom of *637 Information bill was introduced in the Legislature in 1973 (Assembly Bill No. 3247, Senate Bill No. 5205), but after extensive processing in committee the ultimate bill (Assembly Bill No. 3247-B, Senate Bill No. 10813, L 1974, ch 578) contained no exemption for investigatory files and was enacted without it. Section 88 (subd 7, par d) was inserted as an amendment at the request of the New York State District Attorneys Association and enacted (L 1974, ch 579) immediately after passage of the original bill. The Governor’s bill jacket contains a memorandum from the District Attorneys Association strenuously objecting to the fact that Assembly Bill No. 3247-B, as enacted, did not exempt "investigative material” from public disclosure (Governor’s bill jacket, Assembly Bill No. 3247-B, L 1974, ch 578, pp 103-104). The bill jacket also contains a letter from Senator Marino, the bill’s Senate sponsor, dated May 28, 1974, in which he refers to the amendment as follows: "The chapter amendment also protects information that is compiled as part of an investigatory file. This language has been inserted at the request of the district attorneys to make it clear that information compiled by a local police department, the state police, the Bureau of Criminal Investigation or a district attorney would not be available for public disclosure.” (Governor’s bill jacket, Assembly Bill No. 3247-B, p 15). Manifestly, the authors of the New York statute did not intend simply to emulate the existing Federal act, and it is apparent that the primary purpose of the exemption was to protect investigatory files compiled by criminal justice enforcement agencies. Moreover, under the prevailing rules of statutory construction, the exemption must be limited solely to those files.
"The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to 'defeat the general purpose and manifest policy intended to be promoted’.” (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 685; People v Ryan, 274 NY 149.) The opening section of the Freedom of Information Law (Public Officers Law, § 85) states that its intent is to provide "unimpaired” access to governmental information unthwarted "by shrouding it with the cloak of secrecy or confidentiality.” It concludes as follows: "The legislature therefore declares that government is the public’s business and that the public, individually and collectively,, and represented by a free news media, should have unimpaired access to the records of government.” In a *638 memorandum of approval in which the new statute was referred to as "historic,” Governor Wilson wrote: "As government has grown and become more sophisticated and complex, so too has it become more remote from the people and more difficult to comprehend in all of its workings. These bills will provide, for the first time in New York State, a structure through which citizens may gain access to the records of government and thereby insight into its workings.” (Memorandum of Governor Malcolm Wilson, approving L 1974, chs 578-580, 1974 NY Legis Ann, p 392.) According to Senator Marino, the law "will promote free and open disclosure by government at all levels, thereby clarifying the public’s right to information which is constitutionally theirs.” (Marino, The New York Freedom of Information Law, 43 Ford L Rev 83, 92.)
Generally, laws intended to provide disclosure should be liberally construed (Cuneo v Schlesinger, 484 F2d 1086, cert den sub nona. Rosen v Vaughn, 415 US 977; Matter of Burke v Yudelson, 81 Misc 2d 870, affd 51 AD2d 673) and the instant statute has been viewed as reflecting a broad policy in favor of disclosure (see, e.g., Matter of Dillon v Cahn, 79 Misc 2d 300, supra; see, also, Greenfield Constr. Co. v State of New York, 52 AD2d 734; Matter of Dwyer, 85 Misc 2d 104; Matter of Sigety v Horan, 50 AD2d 779, supra [dissenting opn]). That broad policy mandates rejection of the current respondents’ belated argument (first asserted in their law memorandum) that the files here sought are not public records under the statute.
For like reasons, exemptions in a disclosure statute should be narrowly construed to permit maximum access (cf. Zuckerman v New York State Bd. of Parole, 53 AD2d 405, supra; see Matter of Dwyer, supra; Vaughn v Rosen 484 F2d 820, cert den 415 US 977). Further evidence of legislative intent mandating narrow construction of the instant exemption is furnished by subdivision 10 of section 88 of the statute which provides that the law should not be construed to limit or abridge rights existing at the time it was enacted. This language serves not only to preserve the benefits of existing disclosure laws such as section 51 of the General Municipal Law (which the current petitioner did not opt to utilize) and others which apply to specific areas of State or local jurisdiction, but it also demonstrates that it was not the statutory scheme to replace a liberal law with a more restrictive one. The statute’s predecessor (Public Officers Law, § 66), had been *639 interpreted as expressing "a strong legislative policy to make available to public inspection and access all records or other papers kept 'in a public office,’ at least where secrecy is not enjoined by statute or rule” (New York Post Corp. v Leibowitz, 2 NY2d 677, 686, supra). Not only did section 66 of the Public Officers Law contain no exemption for investigative files, but, when the new statute was enacted, no State-wide blanket exemption for such files existed. Investigatory records were shielded by legislation applicable to specific civil subdivisions of the State (see, e.g., Matter of Cherkis v Impellitteri, 307 NY 132; Blaikie v Borden Co., 47 Misc 2d 180 [New York City Charter, § 1114]; Scott v County of Nassau, 43 Misc 2d 648 [County Government Law of Nassau County, § 2207]), specific departments of government (see, e.g., Mental Hygiene Law, § 13.09; Family Ct Act, § 784; Banking Law, § 36, subd 10), or where a common-law public interest privilege could be sustained (see Cirale v 80 Pine St. Corp., 35 NY2d 113). A broad interpretation of section 88 (subd 7, par d) would cloak so many governmental activities with secrecy as to result in an impermissible perversion of the basic statutory intent (cf. Matter of Schacht, 20 AD2d 507). Therefore, the sole beneficiaries of the exemption are criminal law enforcement authorities, and the Huntington Building Department cannot predicate its refusal to permit petitioner to examine its records on section 88 (subd 7, par d).
This interpretation of the statute does not, however, conclude the underlying controversy because, in its effort to preserve secrecy, the town has also asserted in its memorandum of law that its records are privileged. The common-law public interest privilege available to public agencies to prevent disclosure was not abolished by the Freedom of Information Law (see Cirale v 80 Pine St. Corp., supra). The hallmark of this privilege is its applicability when the public interest would be harmed if the material sought were to lose its cloak of confidentiality (Zuckerman v New York State Bd. of Parole, supra [citing Cirale]). It attaches to confidential communications between public officers in the performance of their duties where the public interest requires that such communications or the sources not be divulged (People v Keating, 286 App Div 150). It has been applied to protect records of ongoing investigations (see People ex rel. Woodill v Fosdick, 141 App Div 450), although, in the absence of statutory exemption, investigative records are subject to inspection (see Matter of Ihrig v *640 Williams, 181 App Div 865, affd 223 NY 670). The assertion of the common-law privilege places the burden upon the government to come forward with its reasons for its refusal to open its files. Whether records are privileged must be determined on a case-by-case basis and the public interest in protecting the secrecy of an investigation may be displaced by a superior public interest in disclosure (Matter of Board of Ethics v Temporary State Comm., 41 AD2d 486). In Cirale (35 NY2d 113, 118-119, supra) the Court of Appeals described the government’s burden as follows: "There must be specific support for the claim of privilege. Public interest is a flexible term and what constitutes sufficient potential harm to the public interest so as to render the privilege operable must of necessity be determined on the facts of each case. Such a determination is a judicial one and requires that the governmental agency come forward and show that the public interest would indeed be jeopardized by a disclosure of the information. Otherwise, the privilege could be easily abused, serving as a cloak for official misconduct.”
The instant respondents aver that their investigation is an ongoing one, but their papers are devoid of facts to demonstrate how the public interest will be jeopardized if inspection by the petitioner takes place. Their assertion of privilege is wholly based upon conclusory use of the terms "executive privilege” and "attorneys’ work product.” Executive privilege, as the term is generally employed, relates to matters of national security and foreign policy (see United States v Nixon, 418 US 683; US Code, tit 5, § 552, subd [b], par [1], cl [A]), and the report of an independent investigation is not an attorney’s work product subject to privilege (Montgomery Ward Co. v City of Lockport, 44 Misc 2d 923; see, also, Matter of Winston v Mangan, 72 Misc 2d 280). "The record, therefore, does not support the respondents’ claim of privilege” (Zuckerman v New York State Bd. of Parole, 53 AD2d 405, 409, supra).
The petition is granted to the extent that an inspection of the relevant files will be permitted. Settle judgment fixing time and place of examination of respondents’ files.