OPINION OF THE COURT
Bentley Kassal, J.
ISSUE
The principal issue is whether information, assembled in the course of a continuing investigation by the City of New York’s Department of Investigation, is subject to disclosure either under the Freedom of Information Law (FIL) (Public Officers Law, § 84 et seq.) or under the normal CPLR article 31 disclosure provisions by reason of the fact that the City of New York (City) is a party to this action. In addition, other issues of privilege and relevance are raised by the application *704 of the plaintiff City, for a protective order, pursuant to CPLR 3133, striking certain interrogatories served by the defendant, BusTop Shelters, Inc. (BusTop) and a motion by BusTop for an order, pursuant to CPLR 3124 compelling further answers to the interrogatories.
The template against which interrogatories are measured is clear. CPLR 3131 provides that "[ijnterrogatories may relate to any matters embraced in the disclosure requirement of section 3101”. CPLR 3101, in turn, calls for "full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof’. "The words, 'material and necessary’, are * * * interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason.” (Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.)
INTERROGATORIES 21-22, 34-41 — RELEVANCE AND PRIVILEGE
Interrogatories 21-22 and 34-41 are challenged on the grounds that they call for irrelevant and privileged matter. Two of these interrogatories deal with internal communications within the office of the comptroller of the City of New York, two deal with information forming the basis for a decision by the Mayor and the remainder relate to an inquiry by the Department of Investigation. In support of these interrogatories BusTop relies upon the FIL as well as normal rights of discovery under CPLR article 31.
(a) INTERROGATORIES 21 AND 22 — COMPTROLLER
The interrogatories relating to the comptroller’s office request information about meetings between the comptroller, Harrison J. Goldin, and two of his assistants, Steven Newman and Judy Seidenfeld, concerning an audit of BusTop’s performance under the original interim authorization.
1. RELEVANCE
The City claims that these interrogatories are irrelevant and outside the scope of the subject matter of this action. An examination of the pleadings indicates numerous issues dealing with BusTop’s performance, the acts of various City offi *705 ciáis during the interim authorization and the subsequent steps taken in awarding a long-term franchise.
Although the City has not emphasized such points, the original and amended and supplemental complaints both contain allegations that "BusTop failed and neglected to construct the required number of shelters” and that most of the shelters were placed in the prime commercial areas.
In addition, BusTop’s answer asserts, as affirmative defenses, that the City (1) intentionally and repeatedly delayed the execution of a long-term franchise to assist unnamed third parties, (2) breached an implied covenant of fair dealing, (3) took acts for the purpose of destroying BusTop and assisting Convenience & Safety Corp. (C & S), (4) acted with unclean hands, (5) conspired with C & S to eliminate BusTop as a competitor for C & S in violation of the antitrust laws of the United States and the State of New York. Finally, BusTop’s two counterclaims expressly allege that: "The creation and issuance of the RFP was brought about and caused by improper acts of the City, including, among other things, the suppression of an audit made by Salvatore J. Nasella, the issuance of a spurious and misleading so-called 'performance audit’ prepared by the Office of the City Comptroller”.
I agree with the City’s suggestion that many of the affirmative defenses and counterclaims appear to be outside of the scope of the original pleadings and raise issues already determined in other actions. However, as recited above, the City has made no motion for summary judgment or other relief to limit the issues in this action. Accordingly, without reaching the merits of the affirmative defenses and counterclaims, the two interrogatories, at this stage, cannot be said to be irrelevant allegations when viewed in light of the present pleadings.
2. AVAILABILITY OF DISCLOSURE PURSUANT TO THE FREEDOM OF INFORMATION LAW AND CPLR ARTICLE 31
Having determined that the information sought in interrogatories 21 and 22 is relevant, the question remains as to whether it is otherwise exempt from disclosure under the FIL or CPLR article 31. In support of its position that these two interrogatories should be stricken, the City offers only the following argument: "Interrogatories Nos. 21 and 22 are objectionable pursuant to CPLR 3101(b) because they seek privileged matter. In requesting information about the internal *706 operations of the Comptroller’s office in the conduct of an audit and preparation of the audit report, defendant seeks information that the courts have consistently held to be privileged and not discoverable. Ward Telecommunications and Computer Services, Inc. v. State of New York, 42 NY2d 289 (1977); BusTop Shelters, Inc. v. City of New York [NYLJ, April 5, 1979, p 13, cols 2-4]”.
The two cases cited by the City in the above quotation are inapposite. The Ward case involved a claim of governmental privilege against liability for a defamatory statement made by employees of the State Comptroller’s office. No claim of privilege from disclosure was raised or involved. The latter case merely denied disclosure because the causes of action to which it related had been dismissed.
The City does not state what specific statutory or common-law privilege it claims under the FIL or CPLR 3101 (subd [b]). An examination of the FIL indicates that the only arguable exemption from FIL disclosure would be that which applies to "inter-agency or intra-agency materials which are not: i. statistical or factual tabulations or data; ii. instructions to staff that affect the public; or iii. final agency policy or determinations” (Public Officers Law, § 87, subd 2, par [g]).
The parameters of that exemption are far from clear. (Compare Matter of McCaulay v Board of Educ., 61 AD2d 1048, with Matter of Burke v Yudelson, 51 AD2d 673.) Further, without knowing the specific content of the discussions in the comptroller’s office which are in question, it would be impossible to determine whether that exemption applied. (Cirale v 80 Pine St. Corp., 35 NY2d 113; Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176.) In any event, the burden of establishing such an exemption is upon the City. (Public Officers Law, § 89, subd 4, par [b]; Matter of Miracle Mile Assoc. v Yudelson, supra, p 179.)
However, it is unnecessary to rely on the FIL in determining this application since the FIL provides that it shall not be construed to limit otherwise available rights of disclosure. (Public Officers Law, §89, subd 5.) Our strong public policy, embodied in CPLR article 31 requires full disclosure of information before trial unless such disclosure is exempted by law. In view of that general policy, the party resisting disclosure bears the twofold burden to:
1. claim a specific exemption, privilege or immunity and
2. demonstrate that the material sought to be discovered is *707 within such exemption, privilege or immunity. (Koump v Smith, 25 NY2d 287, 294.)
With regard to interrogatories 21 and 22, the City has failed to meet either test and the motion for a protective order is denied.
(b) interrogatories 34 and 35 — mayor
Interrogatories 34 and 35 are nominally addressed to information in the possession of the Mayor. To the degree that the interrogatories request information about the inquiry being conducted by the Department of Investigation, the motion for a protective order will be considered with interrogatories 36-41, which apply directly to that inquiry. As to the remainder of the information requested by interrogatories 34 and 35, I find that the City has answered adequately and the motion for further answers is denied.
(c) INTERROGATORIES 36-41 — DEPARTMENT OF INVESTIGATION
Interrogatories 36-41 and parts of 34 and 35 request information about a continuing investigation being conducted by the Department of Investigation (DOI). That investigation is described in an affidavit by the Commissioner of the DOI as follows:
"In view of the variety of allegations relating to the bus shelter matter, I decided in March, 1979 that a complete investigation should be undertaken into all the circumstances surrounding the City’s bus shelter program, the prior interim franchise, the procedures and negotiations surrounding the proposed contract and any financial interest any public offical may have in this area. I spoke with the Mayor and he agreed that such an investigation should be conducted. The current investigation is designed to look into all aspects of the franchise.
* * *
"The Department’s investigation is continuing and, in fact, is in an active and intense stage at this time. The Department has questioned numerous witnesses and intends to call other witnesses. The witnesses are being examined at private hearings pursuant to § 805(b) of the City Charter. In furtherance of the investigation, the Department has obtained a large number of documents from both public and private sources.
*708 * * *
"Since the inception of the bus shelter investigation in March, 1979, the Department has been conducting its investigation in coordination with the United States Attorney for the Southern District of New York. We are providing members of his staff with the information that we have gathered and assisting the United States Attorney in his own investigation into aspects of this matter. That coordination and assistance have shaped the methods and procedures used by staff members of this Department throughout the inquiry. In light of all of these circumstances, I believe that the Department is functioning the bus shelter investigation as a law enforcement agency.”
This description of the nature and scope of the investigation is not contested by BusTop. In fact, BusTop has actively participated in the investigations and various individuals associated with BusTop have testified before the DOI, the United States Attorney and the Federal Grand Jury.
The interrogatories, served by BusTop, seek the disclosure of the scope of the investigation, the information which prompted the investigation, the names and testimony of all witnesses interviewed by the DOI, all documents obtained by the DOI, the present status of the investigation and any conclusions reached by the DOI as a result of the investigation.
In view of all of the issues raised by’the affirmative defenses and counterclaims in BusTop’s answer, as indicated above, there is no real question as to the relevance of these interrogatories. Turning to the other bases upon which the City seeks a protective order, it is clear that the breadth and lack of specificty of the questions would warrant some relief in terms of their form and scope. (Midland Glass Co. v American Can Co., 38 AD2d 820; Federal Pacific Elec. Co. v Fischbach & Moore, 25 AD2d 828; Avco Security Corp. of N. Y. v Post, 42 AD2d 395; Gellis v Searle & Co., 40 AD2d 676.) However, the privilege against disclosure asserted by the City would, if applicable, warrant a protective order against the content of the interrogatories even if they were otherwise properly stated.
1. PUBLIC INTEREST PRIVILEGE
The City claims that it should not be required to reveal the *709 information gathered by the DOI in its continuing investigation because such revelations would: (1) impede the ability of the DOI to gather complete and accurate information in this investigation; (2) discourage witnesses from coming forward and co-operating with the DOI in this and future investigations; (3) influence the testimony of witnesses who do respond; and (4) cause unfair speculation by the public on the basis of incomplete information.
The privilege asserted by these claims, generally called the "official information” or "public interest” privilege, has been described by the Court of Appeals as follows: "As part of the common law of evidence, 'official information’ in the hands of governmental agencies has been deemed in certain contexts, privileged. Such a privilege attaches to 'confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.’ * * * The hallmark of this privilege is that it is applicable when the public interest would be harmed if the material were to lose its cloak of confidentiality * * * It has been said that the privilege is a qualified one, which may be ineffective when it appears that the disclosure of the privileged information is necessary to avoid the risk of false testimony or to secure useful testimony * * * While this test may be appropriate in criminal cases, we would reject any such qualification in civil cases, since the privilege would become meaningless if it could be breached in order to secure 'useful testimony’. Any testimony, if relevant to the action at bar, may be said to be useful. While some commentators have argued that the privilege is qualified and requires a balancing of the needs of the litigants against the potential harm to the public interest that may result from disclosure * * * these, in reality, are two sides of the same coin. Public interest encompasses not only the needs of the government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation. Thus, the balancing that is required goes to the determination of the harm to the overall public interest. Once it is shown that disclosure would be more harmful to the interests of the government than the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure. While the need of a litigant for the information would present a strong argument for disclosure, the court *710 should balance such need against the government’s duty to inquire into and ascertain the facts of a serious accident for the purposes of taking steps to prevent similar occurrences in the future.” (Cirale v 80 Pine St. Corp., 35 NY2d 113, 117-118, supra.)
In several cases, the public interest privilege described above has been held to apply to the Department of Investigation. (See, e.g., Matter of Langert v Tenney, 5 AD2d 586, opp dsmd 5 NY2d 875; Matter of Cherkis v Impellitteri, 307 NY 132; Blaikie v Borden Co., 47 Misc 2d 180.) As Judge Breitel stated in Langert v Tenney (supra, pp 588-589):
"[TJhere is a public interest privilege, covering confidential communications, available to certain public officers in the executive branch in certain contexts. While there is a split of authority whether this privilege is under some circumstances absolute, or whether it is always qualified * * * determination of that question is not crucial to this matter. What is clear is that the qualification, if any, of the privilege does not turn upon the private purpose with which the informant made the confidential communication, but on whether the public interest is better served by disclosure or by keeping the seal of confidence * * * The concern here is with the privilege of the public officer, the recipient of the communication, rather than with the privilege of the maker of the communication.
"The highly confidential and investigative function performed by the Commissioner of Investigation of the City of New York has been clearly determined by the Court of Appeals * * * The very purpose of that office would be defeated if communications made to the commissioner were subject to revelation at the suit of the affected individual. In this respect the commissioner’s function is closely allied to that of the District Attorney or the police officer * * * Generally, the information received or the records made thereof by public investigating officials is not subject to disclosure or inspection.
* * *
"Authorities aside, the controlling public interest with regard to the Commissioner of Investigation is that persons be free to lay accusations and information before him without fear that the commissioner may be compelled to make disclosure. It is just about universally true that an investigator is able to encourage such free communication only if he can give assurance that the communication and the identity of its maker will be kept confidential. That public policy is not to be *711 denied except in extraordinary circumstances, such as in the criminal case where the disclosure may be relevant to proof of innocence.”
Certainly the investigation in this case, as described by the Commissioner of Investigation, is within the umbrella of the "public interest” privilege and, thus, is immune from disclosure under CPLR article 31.
BusTop’s request for disclosure under the FIL raises different questions. As stated by the Court of Appeals, in a somewhat ambiguous footnote in Cirale v 80 Pine St. Corp. (35 NY2d 113, 117, supra), the FIL "does not abolish the common-law privilege for official information”. However, it should be clear that disclosure requested under the rights granted by the FIL must be provided unless it is protected under a specific exemption of the FIL itself. (Matter of Burke v Yudelson, 81 Misc 2d 870, affd 51 AD2d 673, supra.)
The exemption from FIL disclosure claimed by the City is expressly provided for in section 87 (subd 2, par [e]) of the Public Officers Law immunizing those records which: "are compiled for law enforcement purposes and which, if disclosed, would: i. interfere with law enforcement investigations or judicial proceedings; ii. deprive a person of a right to a fair trial or impartial adjudication; iii. identify a confidential source or disclose confidential information relating to a criminal investigation; or iv. reveal criminal investigative techniques or procedures, except routine techniques and procedures”.
BusTop argues that this exemption does not apply because the DOI is not a "law enforcement agency”, citing Young v Town of Huntington (88 Misc 2d 632). In this regard, both BusTop and the City, in its response, appear to have misread Young v Town of Huntington (supra) and the FIL itself.
There is no requirement in the FIL that the records be compiled or held by a law enforcement agency. The only requirement is that the records in the possession of a public agency were compiled for law enforcement purposes. On the basis of the undisputed affidavit of the Commissioner of Investigation, I find that the information sought by the interrogatories was compiled for law enforcement purposes and that, if disclosed, it would result in violating one or more of the conditions which are sought to be avoided by section 87 (subd 2, par [e]) of the Public Officers Law.
Thus once it has been determined that the public inter *712 est privilege does apply and protects information in the possession of a governmental agency, the private litigant may obtain such information only if the overriding public interest requires its disclosure to prevent an injustice. (Cirale v 80 Pine St. Corp., 35 NY2d 113, 118, supra.) No such compelling need has been demonstrated by BusTop and I conclude that the public interest in confidentiality is paramount here. The information gathered by the DOI has been obtained from various sources. Many of those sources are individuals associated with BusTop and, probably, equally available to BusTop’s attorneys. Others are presumably public officials and employees and officers of C & S. As parties to this litigation, they are subject to disclosure under CPLR article 31.
Therefore, the net effect of this determination is not to preclude indispensable discovery by BusTop. Rather, it merely means that BusTop may not employ the DOI as its private investigator. Like any other litigant, BusTop simply must conduct its own investigation.
Accordingly, since the material is privileged under the CPLR and the FIL, the motion for a protective order striking interrogatories 36-41 and parts of 34 and 35 is granted.
CONCLUSION
The City is directed to serve answers to interrogatories 11-13, 15-20, and 21 and 22 within 20 days of service of a copy of this order with notice of entry. In all other respects the motion and cross motion are denied.