212

**CITY OF NEW YORK, Respondent, v ALBERT CORWEN et al., Appellants, et al., Defendants.**

First Department, November 27, 1990

APPEARANCES OF COUNSEL

*C. MacNeil Mitchell* of counsel *(Steven J. Young* with him on brief; *Breed, Abbott & Morgan,* attorneys), for appellants.

*Elizabeth Dvorkin* of counsel *(Francis F. Caputo, Alan H. Kleinman* and *Bob Bailey* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

Asch, J.

Alex Liberman, director of negotiations for the city's De-

partment of General Services' Bureau of Leasing and Space Management, pleaded guilty to racketeering in Federal court in June 1984 after an investigation in the early 1980's gave rise to the charge that he had arranged for landlords to pay substantial sums to his designees as a condition of his approval of city leases for properties owned by those landlords.

The plaintiff City of New York subsequently brought this action alleging that such landlord payments were bribes and that the city was injured by such illegal payments. New York City seeks damages in the amount of such payments. Once sued, the real estate defendants argued that such payments were the result of extortion by the city's agent, who the city should have known was not trustworthy. They contend that the relief sought by the city would amount to a windfall for its agent's extortionate conduct and would represent a double payment by them on the theory that the city suffered no real monetary injury because the market terms of the leases were commercially reasonable. These defendants, accordingly, claim it was they who in fact were injured monetarily by Liberman's victimizing them in the first instance. These contentions raise a myriad of philosophical, public policy and legal issues.

The city's action is against many landlords in addition to defendants-appellants Albert Corwen and his realty companies (the Corwen defendants) and is also against Alex Liberman himself. It is alleged that the Corwen defendants made $483,670 in payments to sundry and assorted Liberman designees— who returned portions to Liberman. The complaint alleges that not only were these payments bribes, but they were fraudulently concealed from the city in that the Corwen defendants executed leases which contained the following clause: "Landlord warrants and represents that no officer, agent, employee or representative of the City of New York has received any payment or other consideration for the making of this lease and that no officer, agent, employee or representative of the City of New York has any interest, directly or indirectly in this lease or the proceeds thereof."

The complaint, as against defendants-appellants, sought reformation of the lease to reduce the amount of rent by the amount of payments; and/or damages for inducement of Liberman's breach of fiduciary duty and fraud and also seeks the imposition of a constructive trust.

In their answer, appellants asserted, *inter alia,* that Liber-

man was acting as the city's agent and therefore, his actions were to be imputed to his employer under the respondeat superior doctrine; that equitable relief to the city was barred by the doctrine in pari delicto. The answer also asserted a single counterclaim against plaintiff city—that the city was negligent in appointing and failing to supervise Liberman, given his predecessor's conviction of soliciting bribes, and ignoring two official investigations of Liberman which allegedly were never concluded due to political interference such that defendants were entitled to recover all payments coerced from them by Liberman, as agent of the city. This claim is also asserted as a "recoupment and setoff" against plaintiff's claim. Defendants-appellants did not (as did other landlord defendants) explicitly assert comparative negligence as an affirmative defense, but the above negligence claim against the city as a setoff may be, and apparently was interpreted by the IAS court to be, such an assertion of that affirmative defense.

In discovery, defendants had sought, *inter alia,* the New York City Department of Investigation's undercover file of the Liberman case, the Department of Investigation's background checks of Liberman and Liberman's personal disclosure form, notes of interviews with city employees and Liberman, debriefing notes of witnesses prior to their testimony before the Federal Grand Jury which indicted Liberman, and documents presented to the Federal Grand Jury. These materials were sought to detail defendants-appellants' allegations that the city should have suspected Liberman prior to his employment and certainly during his tenure.

The plaintiff city moved to dismiss defendants-appellants' three affirmative defenses and the other defendants' comparative negligence affirmative defenses pursuant to CPLR 3211 (b) and defendants-appellants' counterclaims pursuant to CPLR 3211 (a) (7). Further, the city sought a protective order barring the release of Federal Grand Jury related documents until the Federal Court or United States Attorney of the Eastern District of New York authorized release thereof pursuant to Federal Rules of Criminal Procedure, rule 6 (e).

Finally, the city also sought a protective order as to records concerning Liberman's employment history based upon the "public interest" privilege.

The IAS court found the city was under no special duty to the landlords in hiring or supervising Liberman and that, in

any event, any such negligence was not a defense to plaintiff city's claims of intentional fraud. Comparative negligence was found to be inapplicable to this complaint alleging bribery, inasmuch as bribery was a felony and such a "serious violation of law" as to render the doctrine of comparative negligence immaterial (citing *Barker v Kallash,* 63 NY2d 19). Further, comparative negligence was found to be inapplicable here on the additional basis that there was no proximate cause between any negligence by the city in hiring and supervising Liberman and "landlords' self-inflicted harm" (citing *Boltax v Joy Day Camp,* 67 NY2d 617). Apparently this was intended to mean that the landlords' alleged intentional acts were superceding causes. The Corwen defendants' affirmative defense of agency and respondeat superior was rejected on the basis that Liberman's acceptance of bribes was not in furtherance of any duty owed to the city. The affirmative defenses of unclean hands and in pari delicto were also rejected as there was no allegation of wrongful conduct by any city official other than Liberman, only negligence, and the city, as previously indicated, was not responsible for Liberman's conduct. The laches defense was rejected on the basis there had been no unreasonable delay by the city in bringing this action and no prejudicial change in defendants' position. The court dismissed the negligence counterclaim on the basis that defendants had failed to file a notice of claim in timely fashion. The court granted a protective order as to the Federal Grand Jury related materials (on the basis that only a Federal Grand Jury could release these documents under Federal Rules of Criminal Procedure, rule 6 [e]) and as to the confidential Department of Investigation personnel files, without elaboration.

While defendants contend that the city's claim implicitly also lies in negligence, and therefore that they have a valid defense of comparative negligence, we read plaintiff's complaint as alleging intentional torts only. It clearly is focused only in terms of intentional bribery, inducement to breach a fiduciary duty, and fraud.

The defendants-appellants also contend that the IAS court erroneously barred the city's claimed negligence as a defense to the intentional tort causes of action. While the Corwen defendants did not explicitly assert comparative negligence as a defense, they did assert negligence as a recoupment and setoff and the IAS court correctly regarded that as identical to asserting a comparative negligence defense.

In the past, contributory negligence clearly has not been regarded as a defense to intentional torts *(see, General Crushed Stone Co. v State of New York,* 19 NY2d 737) and that appears to remain the rule with respect to comparative negligence *(see, Anderson v WHEC-TV,* 92 AD2d 747).

■ While the city contends that defendants' extortion defense would be applicable only in criminal prosecutions, not in this civil proceeding, one who is victimized by an extortion will not be held civilly liable for the amount of such payments *(Hornstein v Paramount Pictures,* 292 NY 468, 471-472). Thus, while the present posture of this action furnishes no definitive answer at this time, such an affirmative defense may be available to defendants, in the event defendants are able to establish they were the victims of Liberman's extortion *(see,* Penal Law § 155.05 [2] [e] [viii]; § 200.05).

■ The affirmative defense of agency and respondeat superior were properly found to be insufficient by the IAS court. While the respondeat superior doctrine has been extended to not only include employee's acts undertaken in furtherance of the employer's interests, but also to include acts done while the employee was doing the employer's work, even if done irregularly, or in disregard of instructions *(see, Riviello v Waldron,* 47 NY2d 297; *Stavitz v City of New York,* 98 AD2d 529, 532), Liberman's activity here in accepting kickbacks or in collecting personal payments was such a gross departure from normal methods of performance that it cannot be considered in the furtherance of the city's interest and within the scope of employment *(see, Stavitz v City of New York, supra).*

■ Defendants' agency defense also was properly dismissed. Defendants based this affirmative defense upon the claim that Liberman acted within the scope of his authority or that the city subsequently ratified his fraudulent acts by refusing to accept defendants' offer of rescission of the leases (made after the rental market has risen). However, no factual allegations support such legal conclusions. Liberman totally abandoned the city's interests by his actions and the city's refusal to accept recission did not constitute ratification of his actions.

■ The affirmative defenses grounded on "the unclean hands" doctrine and in pari delicto also were properly dismissed since the Corwen defendants fail to allege any immoral or unconscionable conduct by plaintiff city *(see, National Distillers & Chem. Corp. v Seyopp Corp.,* 17 NY2d 12), nor any fault on the city's part equal to the alleged fault of defendants *(see, Meech v Stoner,* 19 NY 26).

■ The laches defense was clearly unsupported by any allegation or showing of unreasonable delay by the city in commencing this action or a resulting prejudicial change by defendants (see, *Dante v 310 Assocs.,* 121 AD2d 332, *lv denied* 68 NY2d 607).

■ Finally, the IAS court properly dismissed the counterclaim seeking monetary damages from the city based upon the defendants' failure to file a notice of claim (see, *Chinatown Apts. v New York City Tr. Auth.,* 100 AD2d 824). To the extent that this claim may be read as seeking a recoupment or setoff, it would represent the affirmative defense of comparative negligence, which as noted, *supra,* is unavailable to the defendants.

■ With respect to the protective order, we agree with the IAS court's denial of discovery as to the dismissed affirmative defenses and counterclaim. Further, while defendants contend that only Grand Jury transcripts are covered by the Federal Rules of Criminal Procedure, rule 6 (e) (2) barring disclosure of "matters occurring before the Grand Jury", it is clear other materials tending to reveal what occurred before the Grand Jury are also covered (see, *U. S. Indus. v United States Dist. Ct.,* 345 F2d 18, 21) as are certain documents examined by the Grand Jury (see, *In re Grand Jury Proceedings,* 851 F2d 860, 863). There was, therefore, no abuse of discretion by the nisi prius court and no possible prejudice to defendants by the disposition requiring Federal court consideration of an application for the release of such materials.

■ However, we find that the grant of a protective order as to the Department of Investigation's undercover file based upon the public interest privilege enunciated in *Cirale v 80 Pine St. Corp.* (35 NY2d 113) was erroneous since the municipality here is itself prosecuting claims against the parties seeking disclosure concerning a concluded investigation (see, *Matter of Burke v Yudelson,* 81 Misc 2d 870, 875, *affd* 51 AD2d 673; *City of New York v BusTop Shelters,* 104 Misc 2d 702, 707). Hence, we disagree with the ruling of the IAS court in this respect.

We have examined the defendants-appellants' remaining contentions and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered May 25, 1989, which, *inter alia,* granted plaintiff's motion to dismiss to the extent of dismissing defendants-appellants' third, fifth and eighth affir-

mative defenses and their counterclaim, and granted plaintiff's motion for a protective order as to material sought in support of those affirmative defenses and counterclaim, as to material in the possession of the Department of Investigation which could reveal matters which occurred before a Federal Grand Jury unless and until such release is authorized by Federal court order, and as to the material contained in the Department of Investigation's file relating to background checks of defendant Liberman and his personal disclosure form, should be modified, on the law, the facts, and in the exercise of discretion, to the extent of vacating the fourth decretal paragraph concerning the protective order with respect to the Department of Investigation's undercover file, and otherwise affirmed, without costs or disbursements.

SULLIVAN, MILONAS and KASSAL, JJ., concur with ASCH, J.; KUPFERMAN, J. P., dissents and would affirm for the reasons stated by KARLA MOSKOWITZ, J.

Order, Supreme Court, New York County, entered on May 25, 1989, modified, on the law, the facts, and in the exercise of discretion, to the extent of vacating the fourth decretal paragraph concerning the protective order with respect to the Department of Investigation's undercover file, and otherwise affirmed, without costs and without disbursements.