Matter of Pride Intl. Realty, LLC v Daniels (2004 NY Slip Op 50665(U))

[*1]

Matter of Pride Intl. Realty, LLC v Daniels

2004 NY Slip Op 50665(U)

Decided on April 28, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 28, 2004

Supreme Court, New York County
In the Matter of the Application of PRIDE INTERNATIONAL REALTY, LLC d/b/a PRIDE INTERNATIONAL and LOUIS SEVERE, Petitioners, 
 For a Judgment under Article 78 of the Civil Practice Law and Rules and Public Officers Law Article 6
against
RANDY A. DANIELS, as Secretary of State of the State of New York and 
 THE STATE OF NEW YORK DEPARTMENT OF STATE, Respondents.
112948/03

Robert D. Lippmann, J.
Petitioners Pride International Realty, LLC, d/b/a Pride International (Pride) and Louis Severe seek a judgment, pursuant to Article 78 of the CPLR and Article 6 of the Public Officers Law, requiring respondents Randy A. Daniels, as Secretary of State of the State of New York, and the New York State Department of State (the Department) to provide copies of a complaint and accompanying documents filed, by a third party with the Department, against petitioners.
Pride is a limited liability company engaged in the real estate agency business, which maintains an office in Bronx County, New York. Severe, a licensed real estate broker, is a member and vice president of Pride.
On or about February 5, 2003, the Department issued a Notice to Severe and Pride indicating that it had commenced an investigation of Pride's business practices, pursuant to Real Property Law § 442-e (5), and requesting that they provide, within 14 days, certain documents and records, covering the period from January 2002 to January 2003, regarding listings, real estate transactions effected, checks written, and commissions collected.
On February 11, counsel for petitioners, John Virdone, requested an extension of time in which to respond to the notice. The request was granted in a telephone conversation with the Department, at which time, petitioners were informed that the investigation was initiated by the filing of a complaint against Pride by a third party. Virdone requested a copy of the complaint, which was denied on the basis that providing the document might jeopardize the investigation.
On February 28, 2003, petitioners filed a written request for the complaint against Pride, [*2]and also requested a further extension of time in which to respond to the Department's notice.
On March 3, 2003, the Department informed petitioners that their request was denied pursuant section 87 of the Public Officers Law, pursuant to which an agency may deny access to documents which "are compiled for law enforcement purposes and which, if disclosed, would: (i) interfere with law enforcement investigations or judicial proceedings." Public Officers Law § 87 (2) (e) (i).
On March 6, 2003, counsel for petitioners appealed the denial of their Freedom of Information Law (FOIL) request to the Secretary of State, and requested that the investigation of Pride be stayed until the Department complied with Pride's FOIL request. That appeal was denied on March 18, 2003, on the basis that providing the information "would adversely affect the ability of the investigator to continue to obtain testimony and other evidence needed to bring this matter to a close." Letter of Glen T. Bruening, Records Appeals Officer, to John Virdone, dated March 18, 2003. Bruening indicated, however, that the investigative file would be made available once the investigation was completed, subject to any applicable grounds for denial.
On March 28, 2003, in response to a phone call from Pride's attorney, Bruce Stuart, Associate Counsel with the Division of Licensing Services (DLS) of the Department, informed Virdone, by letter, that DLS was withdrawing the original request for information contained in the February 5, 2003 letter, and would issue a new, narrower request.
On July 17, 2003, petitioners filed this proceeding seeking an order requiring that the requested documents be provided to them.
Petitioners argue that Section 87 (2) (e) (i) of the Public Officers Law is only applicable to criminal justice enforcement agencies, and that, therefore, the Department erred in denying their FOIL request. Petitioners rely primarily on the case of Young v Town of Huntington (88 Misc 2d 632 [Sup Ct, Suffolk County 1976]), in which the petitioner sought to examine the records compiled by the building department of the Town of Huntington during its investigation of the petitioner's complaint that construction work at certain town facilities was improperly done. In an effort to determine the intent of the Legislature in enacting the law enforcement exemption in FOIL, the court noted that in New York, the term "law enforcement" has generally been used in the context of criminal enforcement. Id. at 635. The court examined the legislative history of FOIL, which indicated that the bill, as initially introduced to the Legislature in 1973, had no exemption for investigative material, which was added later at the request of the State District Attorneys Association. Id. at 637-638. The court noted a letter in the Governor's bill jacket from Senator Marino, the bill's sponsor in the Senate, stating that the exemption would protect information compiled by local police departments, the Bureau of Criminal Investigation, and district attorneys.
Recognizing that the federal courts have given a broad interpretation to the law enforcement exemption in the Freedom of Information Act (FOIA) (5 USC § 552 [b] [7]), the court rejected the federal approach, in part because of the legislative history of the FOIA exemption, which included a statement in the House Report indicating that the exemption applied to both civil and criminal investigatory files. Applying the principles that laws intended to provide disclosure should be liberally construed and that exemptions to disclosure statutes should be narrowly construed to permit maximum access, the court concluded that New York's law enforcement exemption should be narrowly construed to apply only to criminal law [*3]enforcement authorities. Id. at 639.
In 1979, only a few years after the decision in Young, the Court of Appeals indicated that, because many of the provisions in FOIL were patterned after FOIA, including the law enforcement exemption, the federal case law and legislative history were instructive in considering the scope that exemption. Matter of Fink v Lefkowitz, 47 NY2d 567, 572 n (1979).
Although nearly 30 years have passed since the decision in Young, the question of the applicability of the law enforcement exemption to civil law enforcement has rarely been the subject of litigation. One of the few cases in which the application of the law enforcement exemption has arisen in the context of a civil investigation is Matter of Bello v State of New York Department of Law (208 AD2d 832 [2d Dept 1994]). There, petitioners sought access, through FOIL, to documents compiled by Cablevision Systems Corporation (Cablevision), and obtained by the New York State Department of Law during the course of a civil investigation. Cablevision intervened in the proceeding, objecting to access to the documents, pursuant to the law enforcement exemption to FOIL. Although the court ruled that Cablevision failed to meet its burden of demonstrating that disclosure of those documents would, in fact, interfere with a law enforcement investigation, it did not discuss the question, at issue here, of whether the provision was applicable to the Law Department's investigation.
There are myriad cases, however, interpreting the federal analogue to the law enforcement exemption at issue here, that hold that the exemption applies to civil as well as criminal enforcement. See e.g. Pope v United States, 599 F2d 1383 (5th Cir 1979); Moore-McCormack Lines, Inc. v I.T.O. Corp. of Baltimore, 508 F2d 945 (4th Cir 1974); Timken Co. v United States Customs Service, 531 F Supp 194 (D DC 1981).
The wording of the statute, itself, suggests that the exemption from disclosure contained in section 87 (2) (e) (i) is not limited to criminal enforcement and criminal enforcement agencies. The entire section states that the agency may deny access to records or portions thereof which:

(e) are compiled for law enforcement purposes and which, if disclosed, would:
(i) interfere with law enforcement investigations or judicial proceedings;
(ii) deprive a person of a right to a fair trial or impartial adjudication;
(iii) identify a confidential source or disclose confidential information relating to a criminal investigation; or
(iv) reveal criminal investigative techniques or procedures, except routine techniques and procedures.
Public Officers Law § 87 (2) (e).
In contrast with subsections (i) and (ii), subsections (iii) and (iv) are expressly limited to "criminal investigation" and "criminal investigative techniques." That limitation in subsections (iii) and (iv) suggests that in using the general term "law enforcement" in subsection (i), the Legislature did not intend to restrict its applicability to the enforcement of criminal law. For if the section reached only criminal enforcement, the use of the word "criminal" in the latter two [*4]sections would have been unnecessary.
Furthermore, the terms "enforce" and "enforcement" are used in New York statutes to apply to civil as well as criminal enforcement. For example, respondent Secretary of State is specifically authorized to "enforce" the provisions of the Real Property Law and to conduct investigations of violations of the law on the basis of complaints or on his own initiative. Real Property Law § 442-e. It is just such an enforcement investigation that resulted in this proceeding. See also e.g.
the "enforcement" provisions of the Environmental Conservation Law (ECL), which specifically refer to both "suits" and "prosecutions." ECL § 71-0505.
Petitioners' reliance on statements of several administrative agencies and boards in the Governor's bill jacket regarding the scope of the law enforcement exemption merely indicate that the wording is ambiguous.
In response to a request for an advisory opinion regarding the applicability of the law enforcement exemption to records maintained by the Office of the Comptroller of New York City, the Committee on Open Government of the Department of State has stated that the exemption is not restricted to criminal law enforcement agencies. Letter of Robert J. Freemen, Executive Director, Committee on Open Government to Marvin B. Mitzner, dated September 15, 1992; FOIL-AO-7322. As the body charged with furnishing advisory guidelines and opinions to agencies and individuals concerning FOIL (see Public Officers Law § 89 [1] [b]), the interpretation of the Committee on Open Government should be given deference by the court. Kwasnik v City of New York, 262 AD2d 171 (1st Dept 1999), citing Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176 (4th Dept 1979).
Finally, limiting the phrase "law enforcement purposes" to criminal investigations could substantially hamper the important responsibilities of administrative agencies and the New York State Attorney General to enforce civil law and administrative regulations, so many of which can be crucial to the health, safety, and well being of the State and its citizens.
For these reasons, this court rejects the conclusion reached in 1976 by the Supreme Court, Suffolk County, in Young, and concludes that the law enforcement exemption to FOIL is not limited to criminal law enforcement agencies.
Petitioners also argue that, because the original information request was withdrawn by the Department of State in March 2003, and a new request has not yet been made, there is no longer an investigation pending on the basis of which to justify withholding the requested documents. However, in a Sur-Reply Affirmation, Bruce Stuart, Associate Counsel for DSL, states that the revised and narrowed request has not yet been made to petitioners, because their counsel told him in a conversation and a letter that Pride would not comply with the Department's information request until this proceeding regarding their FOIL request was resolved by the court. Therefore, it is not appropriate to conclude, at this time, that the Department's investigation has been abandoned.
Finally, petitioners argue that respondents have not adequately justified their exercise of the law enforcement exemption to the complaint filed against them, and that, in any case, the documents which accompany that complaint, which were allegedly compiled by a third party, are not documents compiled for law enforcement purposes, and should be provided to petitioners.
Jack Bilello, a Senior License Investigator with DLS who has been an investigator with [*5]the department for approximately six years, states that if the complaint sought by petitioners were provided to them at this time, it would interfere with the Department's investigation, both because it would adversely affect the Department's ability to obtain accurate and complete testimony from persons with relevant information, and would limit the Department's ability to obtain full and accurate information from Pride, because petitioners would be on notice what type of information the Department is seeking and could tailor its responses appropriately. The court notes that the Department has not denied petitioners' FOIL request for all time. Rather, the Department has stated that the documents sought by petitioners will be provided to them after the Department's investigation has been completed, subject to any other applicable exemptions under FOIL.
As the Court of Appeals noted in Fink, "[h]owever beneficial its thrust, the purpose of [FOIL] is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that information to construct a defense to impede a prosecution." 47 NY2d at 572. Revealing the identity of the complainant at this time could certainly make it difficult for the Department to obtain information from other persons necessary to their investigation. It is also easy to see that obtaining a copy of the complaint against them, prior to answering the Department's document request, could enable petitioners to frustrate a pending investigation or construct a defense to an enforcement proceeding.
However, in addition to seeking the complaint by the third party, petitioners seek documents accompanying the complaint. The Department has not provided any information to petitioners or the court that identifies even the nature of those documents. It is, therefore, impossible to determine whether those documents are covered by the enforcement exemption. The burden of demonstrating that the requested material is exempt, falls on the party asserting the exemption. Westchester Rockland Newspapers, Inc. v Kimball, 50 NY2d 575, 580 (1980), citing Fink, 47 NY2d at 571. Respondents have failed to meet that burden with respect to the documents accompanying the third party's complaint. Thus, prior to a final determination of the petition by the court, respondents are directed to provide to the court and petitioners, a log identifying the "accompanying documents" sufficiently for the court to determine whether the assertion of the law enforcement exemption is appropriate with respect to those documents. Alternatively, respondents may submit those documents to the court for in camera review.
Accordingly, it is hereby
ORDERED that, within 30 days of receipt of a copy of this order with notice of entry, respondents are directed to submit to the court and serve on petitioners a log identifying the "accompanying documents" sufficiently for the court to determine whether the assertion of the law enforcement exemption is appropriate with respect to those documents. Alternatively, respondents may submit those documents to the court for in camera review.
Dated: April 28, 2004
ENTER:
 _________________
J.S.C.